## CIRCUIT COURT OF THE CITY OF NORFOLK

Janet A. Rodgers

v.

Federal Energy Corp.

January 2, 1985

Case No. (Law) L-82-267

By JUDGE JOHN W. WINSTON

Dr. Janet A. Rodgers (Rodgers) here seeks money damages from Federal Energy Corporation (Federal) for its alleged breach of their contract pursuant to which Federal undertook to invest Rodgers's money in a series of applications for oil and gas leases available through a lottery system sponsored by the United States government. The breach she says caused the rejection of a selected application that carried her name. Federal denies any breach of that contract and further contends that its liability if any be shown is contractually limited under the facts to a refund of the rejected application filing fee.

Federal Energy Corporation is located in Dallas, Texas, and conducts its business from there. Dr. Janet A. Rodgers is a resident of Virginia.

Following long distance telephone conversations between Rodgers and a representative of Federal, she received in the mail in Virginia the "*Service Agreement*" (Exhibit P1) which is the contract that is the subject of this suit. That contract had been prepared and signed by Federal in Texas before being sent to Rodgers in Virginia for her signature. Rodgers first read the contract, then signed it, and returned it to Federal in Texas with

her check in the amount of $13,500.00 (the consideration called for in the contract).

Federal thereafter performed all its required contractual duties. Based upon appropriate research it selected the lease parcels upon which applications were to be made in Rodgers's name. It then filled out and filed the required application forms with the appropriate government agency.

What it did not do was fill in certain blanks of the newly revised applications forms (substituted for earlier ones) required by the newly amended regulations issued by the federal Bureau of Land Management during 1980 and effective from October 1, 1980. (These regulations replaced ones published October 1, 1979.) It was the testimony of Federal's president (E. Carter Bills, II) that the revised regulations were confusing to him and that he sought the advice of Charles E. Weller of the Bureau of Land Management as to their meaning. (Mr. Weller was stated to be the drafter of the revised regulations.) Based upon that advice as sought and received Bills did not answer the new form questions (d), (e), and (f) (relating to information said to be unavailable to Federal) on any of the revised applications submitted for Rodgers between July and November 1980, (see Exhibit P5), always because the information was unavailable and because he understood from Mr. Weller that the applications would be considered completely filled out despite these omissions.

One of these Rodgers applications was drawn by the government in October, 1980, (Parcel WY 5292) and Rodgers was so advised by Federal. (Exhibit P2.) But on May 21, 1983, an office of the Bureau of Land Management in Wyoming notified Rodgers that because the boxes following questions (d), (e), and (f) were not checked at the time her application form had been prepared, the application for the lease had been rejected.

Rodgers unsuccessfully pursued an administrative appeal of this rejection, then filed this suit for damages against Federal.

Federal's limitation of liability defense is based upon the following language in the Service Agreement (Exhibit P1):

> 5. DUTIES. Upon acceptance by FEC and during
> the term of this agreement, FEC hereby agrees

to file 500 applications at the rate of approximately 42 per month, pursuant to FEC's Programs for the acquisition of Federal oil and gas leases, on behalf of client. Client shall retain the right to designate any lease parcel, by number, upon which application should be made on his behalf, so long as such designation shall be made to FEC, in writing, no later than the third Tuesday of any given month in which such lease parcel becomes available for application. *In case of clerical or other error by FEC, Client agrees that FEC's total liability shall not exceed the amount of the filing fee or rental actually advanced for the particular application involved.* (Italics supplied.)

Though Rodgers concedes that she read all of the provisions of the contract before signing it and was aware of the limitation provision quoted above, she argues that such a limited liability clause is against the public policy of Virginia and thus unenforceable.

It is the law of Virginia that a contract entered into in Virginia but to be performed in another state will be construed according to the laws of the state of performance. Further, the parties may validly contract instead as to what laws are to be applied. See discussion in *Michie's Jurisprudence Virginia and West Virginia*, Vol. 4A, "Conflict of Laws, Domicile and Residence," Sections 20-26.

Here the contract was made in Virginia but the parties agreed that it was to be performable in Dallas County, Texas. (See Exhibit P1, paragraph 10.) Rodgers's application forms complained of were in fact prepared for her in Texas. Therefore, this Virginia court is required to construe and enforce the provisions of the contract according to the laws of Texas unless they are contrary to the public policy of Virginia.

Because the limitation clause relied on by Federal is not against the Constitution or laws or public policy of Texas, it is enforceable and binding under Texas law. The clause was written into the contract which Rodgers first read and then signed. Further, she was not at any disadvantage in her dealings with Federal and could have freely declined to invest her money through it had she so chosen. *Allright, Inc. v. Elledge,* 515 S.W.2d 266

(Texas 1974). And in this factual situation it is not against the public policy of Virginia to enforce such a limitation provision as contractually agreed to by these parties. *C. & O. Railroad Co.* v. *Telephone Co.*, 216 Va. 858 (1976). Rejecting the earlier dicta in *Johnson's Adm'x* v. *R. & D. Railroad Co.*, 86 Va. 975 (1880), the Virginia Supreme Court said: "We are of the opinion that the rule followed by a majority of the states that a railway company *not acting as a common carrier* may exempt itself, by contract, from liability for negligence is sound." (Italics supplied.) (See page 865 of *C. & O.*) What is enforceable between non-common carriers is certainly enforceable between a Virginia speculator and a Texas finder of the property to be speculated on.

The limitation provision itself is clear and unambiguous. It frees Federal from any "clerical or other error" in the performance of any contractual duties over and above the amount of the filing fee for the particular application involved. And Federal's failure to check the proper blocks though not a clerical error was certainly an "other error" which directly brought about the application's rejection.

Beyond that, the court finds Federal did not breach or negligently breach its contract with Rodgers. The evidence in this case was that Federal, faced with amended regulations and application forms and being without the information needed to correctly respond to (d), (e), and (f), sought the advice of the government official in charge of drafting the regulations at issue on how to fill out the forms. Acting on his advice that the proposed omissions would not make them invalid Federal submitted the application forms with (d), (e), and (f) incomplete. That Federal relied upon the erroneous advice of a knowledgeable government official could not save Rodgers's application from being rejected. But such reliance was not a contractual or negligent breach under the factual evidence presented at the trial.

That Rodgers was damaged by Federal's non-completion of her winning application form is unquestioned. The uncontradicted testimony of a credible expert (Gordon N. Blair) established that Rodgers could have realized at least $97,000.00 on her speculative investment if the rejection had not occurred. However, under the terms of her contract with Federal, such loss cannot be allowed.