## Wytheuille.

JOHNSON'S ADM'X v. RICHMOND & DANVILLE R. R. Co.

### JUNE 19th, 1890.

PUBLIC POLICY—*Contracts—Negligence.*—A contract whereby a party stipu-
lates for his exemption from liability for the consequences of his own
negligence, is against public policy and void. This is so, independently
of Code, section 1296.

Argued at Richmond.    Decided at Wytheville.

Error to judgment of circuit court of city of Richmond, ren-
dered May 30th, 1889, in an action of trespass on the case,
wherein Margaret Johnson, administratrix of James Johnson,
deceased, was plaintiff, and the Richmond and Danville rail-
road company was defendant. The object of the action was
to recover damages for the death of plaintiff's intestate, which
was claimed to have been caused by the negligence of the
defendant corporation.

The deceased was a member of a firm of quarrymen doing
business under the style of Hutcheon, Johnson & Donald. On
the 22d of May, 1885, the firm entered into a written agree-
ment with the railroad company for the removal of a certain
granite bluff on the company's right of way at a point about
three miles south of Richmond, in the county of Chesterfield.
This bluff, or rather so much thereof as was on its right of
way, the company wished to have removed, for the purpose of
straightening its track at that point.

By the terms of the agreement, the firm, in consideration of

their services, were to have all the marketable granite removed by them—the necessary facilities for its transportation to be furnished by the company; and by the fifth clause of the agreement it was stipulated as follows :

" The party of the second part [*i. e.* the said firm] hereby agrees and binds itself that the party of the first part [*i. e.* the railroad company] shall in no way be held responsible for any injuries to or death of any of the members of the said firm, or of any of its agents and employees, sustained from said work, should such death or injury occur from any cause whatsoever. And in the event of any suit being brought against the said party of the first part, or any judgment being obtained against the same, then the said party of the second part' shall resist said suit, and pay such judgment, together with all costs incident thereto."

There was evidence at the trial tending to prove that after the agreement was executed, there was, if not a positive contract, at least an understanding between the parties, that the trains of the company, in passing the bluff, would be run at a rate of speed not exceeding six miles an hour, and it was proved that an order to that effect was given by the proper officers of the company. There was also evidence tending to prove that when the accident occurred which caused the death of the plaintiff's intestate, the train by which he was fatally injured, was running at a rate of speed not less than twenty-five miles an hour, though upon this point the evidence was conflicting.

In the progress of the work, the dirt and rubbish from the excavation was removed in wheel-barrows down a slanting tramway from the side of the bluff to the main track of the railroad, which ran near the foot of the bluff; thence on a plank placed across the track between the rails, which rested on two blocks—one at either end—so as to make the plank level with the rails, it was wheeled across the track.

On the day of the accident, as one of the employees of the

firm was coming down the tramway with a wheel-barrow heavily loaded with dirt, he suddenly heard the deceased calling his name. He looked around, he says, and saw the deceased running up the track "with the train right behind him." It was a passenger train going south, and was behind time. The witness says he was unable to stop the wheelbarrow until it had gotten upon the track, and then was unable to pull it back before it was struck by the engine. The deceased rushed forward to remove the plank across the track, as the custom was upon the approach of trains, and succeeded in removing it before the train got there. But almost instantly, the wheelbarrow was struck by the engine, and hurled against his stomach with such force that he died from the injuries, so inflicted, the next day.

After the evidence on both sides had been closed, four instructions (for which see opinion) were offered by the plaintiff, all of which the court refused to give, and in lieu thereof gave the following:

"If the jury shall believe from the evidence that the plaintiff's intestate, James Johnson, executed the agreement bearing date May 22d, 1885, which has been read in evidence, such agreement precludes the plaintiff from recovering in this case, and the jury must find for the defendant."

The jury thereupon returned a verdict for the defendant, which the plaintiff moved the court to set aside as being contrary to the law and the evidence; but the motion was overruled, and judgment entered on the verdict, whereupon the plaintiff obtained a writ of error.

*Meredith & Cocke*, for the plaintiff in error.

*Staples & Munford*, for the defendant in error.

Lewis, P., delivered the opinion of the court.

It was very properly conceded in the argument that the instruction given by the circuit court is erroneous. The theory of that instruction is that the fifth clause of the written agreement, although it, in effect, stipulates for exemption from liability even for the consequences of the company's own negligence, is notwithstanding valid, and consequently precludes a recovery by the plaintiff, whether the company was negligent or not. It would be strange, indeed, if such a doctrine could be maintained. To uphold the stipulation in question, would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void. Nothing is better settled, certainly in this court, than that a common carrier cannot by contract exempt himself from responsibility for his own or his servants' negligence in the carriage of goods or passengers for hire. This is so independently of section 1296 of the Code; and the principle which vitiates a stipulation for exemption from liability for one's own negligence, is not confined to the contracts of carriers as such; it applies universally. Cooley, Torts, p. 687; 2 Thomp., Neg., 1025; *Roesner* v. *Hermann*, 10 Biss., 486; *Railway Co.* v. *Spangler*, 44 Ohio St., 471.

The circuit court also erred in refusing to give to the jury the first instruction offered by the plaintiff. The substance of that instruction was that if the jury believed from the evidence that the defendant promised or assured the firm that its trains would not pass the bluff, while the work of removing it was going on, at a higher rate of speed than six miles an hour, and that Johnson's death was caused by a violation of such promise, without fault on his part, they should find for the plaintiff. This instruction is clearly right, and ought to have been given.

The important part of the second instruction was, that if the jury believed from the evidence that the defendant violated its

promise or assurance, as set out in the first instruction, and that in consequence thereof the deceased rushed forward to prevent one of his employees from wheeling his barrow on the track, or to remove the plank between the rails, and in the attempt to do so, was struck and fatally injured by the train, they should find for the plaintiff.

The principle upon which it is contended that this instruction ought to have been given, is, that when one risks his life, or places himself in a position of danger, in an effort to save the life of another, or to protect another who is exposed to a sudden peril, or in danger of great bodily harm, such risk for such a purpose is not negligence. Beach, Cont. Neg., sec. 15. But while there is no question as to the principle here contended for, the objection to the instruction is, that it does not leave it to the jury to say whether the employee, or any other person, on the occasion in question, was in such a position of danger as to bring the case within this principle. There was no error, therefore, in refusing to give the instruction in the form in which it was offered. The court, however, should have modified it to suit the case, and then have given it as modified, as its total rejection was calculated to mislead the jury. *Peshine* v. *Shepperson*, 17 Gratt., 472; *Alexandria Sav. Inst.* v. *McVeigh*, 84 Va., 41.

The third and fourth instructions offered by the plaintiff, were as follows:

"3. Contributory negligence is a matter of defence, and the burden of proving the same is upon the defendant.

"4. If the jury find for the plaintiff they may assess the damages by fixing the same at such a sum, not to exceed $10,000, as would be equal to the probable earnings of the deceased, taking into consideration the age, business capacity, experience and habits, health, energy, and perseverance of the deceased during what would probably have been his lifetime, if he had not been killed, and by adding these to the value of his services in the superintendence, attention to, and care of,

his family, and the education of his children, of which they have been deprived by his death."

It is conceded in the brief of counsel for defendant in error, that these instructions propound "undoubted law." But it is contended that the plaintiff has not been prejudiced by the refusal to give them, nor by the giving of the instruction that was given, because, upon the evidence, the case is clearly with the defendant. This position is untenable. The evidence is not fully certified in the bill of exceptions, but only so much thereof as was supposed to be necessary to show the relevancy of the instructions offered; and looking to that, it is very clear that the case was not properly submitted to the jury, and that the judgment must be reversed, and the case sent back for a new trial.

JUDGMENT REVERSED.