# Staunton

## J. F. Kitchin, Trading as Norfolk Contracting Company v. Gary Steel Products Corporation and Bay City Shovels, Incorporated.

September 8, 1954.

Record No. 4255.

Present, All the Justices.

The opinion states the case.

*I. W. Jacobs, A. A. Bangel, Gordon E. Campbell* and *Worthington & White,* for the plaintiff in error.

*Rixey & Rixey, Harry E. McCoy, Jr., Thomas M. Johnston* and *Hughes, Little & Seawell,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

The case here under review is a contract action brought by Gary Steel Products Corporation, hereinafter called Gary, against J. F. Kitchin, trading as Norfolk Contracting Company, hereinafter called Kitchin, and Bay City Shovels, Incorporated, hereinafter called Bay City, for the recovery of $11,611.02. For this sum Gary obtained judgment in the court below against Kitchin.

Monsanto Chemical Company, hereinafter called Monsanto, was engaged in the manufacture of chemicals in the City of Norfolk. It desired to have fabricated and erected upon its boilerhouse a new steel smokestack, and contracted with Gary to do the work. In the process of erection a section of the stack fell through the boilerhouse, causing the damage for which Monsanto sued Gary and recovered a judgment in the amount of $11,611.02.

The instant suit was brought by Gary against Kitchin for reimbursement of this sum which Gary paid Monsanto. Gary based its claim on a contract which it allegedly had with Kitchin for the erection of the stack, after its fabrication by Gary.

Numerous motions and pleadings were filed and passed

upon by the trial court before the issue was finally joined upon the motion for judgment filed by Gary against Kitchin and Kitchin's answer thereto.

In addition to his answer to the motion Kitchin filed a counterclaim against Gary for $3,008, as "rental for the cranes" used in the erection of the stack.

Bay City, which manufactured the crane used in erecting the stack, was joined as a party defendant, but upon motion, the evidence against Bay City was stricken by the court, to which ruling an exception was taken. This exception, however, was not insisted upon on appeal and therefore Bay City is no longer involved.

The motion for judgment contained the following allegation:

"The defendant Kitchin entered into a contract with the undersigned plaintiff Gary, by which the said Kitchin agreed to erect and put in place on the said boiler the aforesaid steel smokestack, and it was further agreed between Gary and Kitchin that if in the erection of the smokestack there should be any failure on the part of the smokestack the liability for the resulting damages should be upon Gary, and if there should be any failure on the part of the crane or its operation the liability for the resulting damages should be upon Kitchin."

It was further alleged that "the said crane collapsed and failed as the result of the insufficiency of the crane and the carelessness and negligence" of Kitchin, his servants, agents and employees; that when Gary was sued by Monsanto, Kitchin was notified of the pending suit and was invited to defend it, which invitation was declined; that upon Kitchin's refusal to defend the suit Gary defended it; that Monsanto recovered the judgment aforesaid which was paid by Gary; and that Gary should now be reimbursed by Kitchin, under the contract, for the payment so made.

While Kitchin's answer to the motion for judgment denied the existence of the contract alleged by Gary, it did not point out the relationship which Kitchin claimed to exist.

Only in his counterclaim was his position made known. There it was contended that Gary "rented certain cranes from the defendant", to be used in the erection of the smokestack. Kitchin asserted that he "fully performed (the) rental agreement" with Gary and had not been paid for the use of the cranes.

Gary's answer to the counterclaim denied owing in full the amount so claimed; it denied the existence of the alleged rental agreement and reasserted the contract stated in the motion for judgment which was that Kitchin agreed to erect the stack and to be solely responsible therefor. The answer further asserted that Kitchin's compensation for the work was to be "based on reasonable time to accomplish the work but in no way (had Gary) rented any crane or cranes from the defendant", as alleged by Kitchin in the counterclaim.

Further answering the counterclaim, Gary asserted that Kitchin had agreed to raise the stack in one section but changed his plans and undertook to raise it in "more than one section", and instead of using the "Northwest" crane originally planned, substituted another; the change in the agreed manner of erecting the stack resulting in additional time being consumed for which Gary should not be required to pay.

The issue in the case thus narrowed down to one question: What was the understanding between the parties relative to the erection of the smokestack? If the contract was as Gary claimed in its motion for judgment and in its answer to Kitchin's counterclaim, the judgment for Gary was proper. If, on the other hand, Kitchin, as alleged in his counterclaim, only rented a usable crane to Gary, without assuming further responsibility, he owed Gary nothing.

The evidence regarding the alleged contract between Kitchin and Gary was conflicting. Gary introduced testimony to the effect that it was engaged in the business of working metals and that it was equipped to fabricate the smokestack but had no means of erecting it; that it attempted

to bid on the fabrication of the stack only; that Monsanto insisted upon a bid for a completed job, one covering both fabrication and erection; that Monsanto would not entertain separate bids; that Gary saw Kitchin's advertisement seeking employment in the erection of smokestacks; that Kitchin was contacted regarding the Monsanto job; that the oral contract alleged in the motion for judgment resulted; that when the terms of the contract between Gary and Kitchin for the erection of the stack had been agreed upon Gary submitted to Monsanto its bid on the completed job which was accepted; that the stack was properly fabricated by Gary; that Monsanto notified Gary that its plant would be shut down at a certain time and the stack could then be erected, and Gary so notified Kitchin; that Kitchin changed the plans as contemplated in the original contract and undertook to erect the stack in two sections instead of one; that Kitchin also changed his original plan to use the "Northwest" crane and substituted the Bay City equipment; that Kitchin then undertook the erection of the stack and a section thereof fell through the boilerhouse causing the damage complained of; that Monsanto sued Gary for the resultant damage and recovered the sum of $11,611.02; that Gary paid Monsanto the judgment thus recovered and was suing Kitchin, under the contract, for reimbursement.

The evidence introduced by Kitchin tending to prove his theory of the case was that Gary, not having the equipment necessary to erect the stack after its fabrication, rented the equipment from Kitchin; that Kitchin was only obligated to furnish the crane and operator at $20 per hour; that Gary was to use the equipment and the operator in erecting the smokestack and that Kitchin was not to be responsible therefor.

On the evidence thus adduced the jury, as aforesaid, returned a verdict for Gary in the amount sued for, upon which judgment was entered.

Kitchin agrees that the jury's verdict, based upon conflicting evidence, properly admitted, and under proper in-

structions, would resolve the case against him. He contends, however, that certain evidence was improperly admitted over his objection and that in several instances the court failed properly to instruct the jury.

The first question raised by Kitchin under the assignments of error is: "Did Kitchin, by his alleged contract to be responsible for the collapse of the crane, thereby agree to indemnify Gary Steel against a loss caused by Gary Steel's own negligence?"

In dealing with this question Kitchin argues that the evidence shows that Gary's men were in charge of erecting the stack and were giving instructions as to how the work should proceed, and thus the failure of the equipment or other cause of the damage complained of was due to the negligence of Gary, for which Kitchin should not be held responsible.

The evidence disclosed that some of Gary's men were on the scene when the stack was being erected and one or more of them voluntarily helped hold the guy wires. No one representing Gary, possessing authority to change the terms of the erection contract, was shown to be present. If Gary's men helped under the related circumstances, they were at the time working for Kitchin and not for Gary.

Kitchin further argues that the instructions to the jury do not adequately cover this aspect of the case. However, at Kitchin's instance, the court instructed the jury that if they believed from the evidence that Kitchin, without any other agreement or breach of warranty, rented the crane and operator to Gary and that Gary had the right and did in fact direct the means and method by which the stack was to be erected, with the right of control over the crane and its operator, then they must find a verdict for Kitchin. Thus the jury was fully instructed on Kitchin's theory of this phase of the case.

Kitchin further contends that the contract in effect stipulated against liability for Gary's own negligence and he asserts that for this reason it was against public policy, citing

*Johnson* v. *Richmond and Danville R. R. Co.*, 86 Va. 975, 11 S. E. 829. Responsibility under the agreement was not predicated upon negligence. The agreement as resolved by the jury in Gary's favor was that Kitchin was to furnish and operate the crane and that if there was a failure in the operation he was to be responsible therefor. There is no merit in this contention.

■ The second question raised under the assignments of error reads: "Is the claim adjuster for Kitchin's liability insurance company an agent of Kitchin in making an admission of liability binding on Kitchin?"

The individual here referred to is one A. F. Williams. The question posed indicates that Kitchin was covered by insurance and implicates the claim adjuster for the insurance carrier. While the record discloses that the identity of Williams was made known to the Judge, his identity and the fact that insurance was involved were never mentioned before the jury. The attorney for Gary pointedly and properly warned the witnesses against the injection of insurance into the case. The following excerpts from the evidence, forming the basis for this assignment, relate to a conversation which occurred at the scene of the accident immediately after it happened. Hartwell H. Gary, Jr., President of Gary, was asked:

"Q. What was said by you or Mr. Nelson (Vice President of Gary) to Mr. Kitchin, and what was said by Mr. Kitchin to you?

"A. When Mr. Kitchin arrived on the job I asked Mr. Kitchin what he thought we should do to get the mess cleaned up; that the Monsanto Chemical Company's plant had to get back into operation. Mr. Kitchin said that he understood the thing had to be cleaned up; that he would like to wait until his Mr. Williams arrived on the job and would discuss it with him. He waited until Mr. Williams arrived. Then in the meantime I recalled to Mr. Kitchin the agreement between him and Mr. Nelson as to respon-

sibility. Mr. Kitchin agreed that that was the agreement.

"Q. What did you call to Mr. Kitchin's attention?

"A. I recalled to Mr. Kitchin's attention the fact that the agreement had been that in the case of failure of the stack—if the stack collapsed or any rigging which we attached to the stack collapsed, it would be our responsibility; that in case of failure of the crane while the stack was being taken from a position on the ground to its resting place in the air, it would be the responsibility of Norfolk Contracting Company (Kitchin). Mr. Kitchin agreed that that was correct. But he said, 'Before I agree to tell you to go ahead and take action in cleaning this up, I would like for Mr. Williams to arrive on the scene.' We waited for Mr. Williams to arrive on the scene. There was some discussion about the responsibility. In my presence and in the presence of Mr. Nelson and Mr. Williams, Mr. Kitchin reiterated the agreement. Mr. Williams then, when I pressed him to give me an answer as to who would pay for it, who would pay for the damages, said, 'Go ahead. We will be responsible for the payment.' * * *

"By the Court:

"Q. That was in the presence of Mr. Kitchin?

"A. Yes, sir."

Williams had been called to the scene by Kitchin and Kitchin constituted him his agent to speak for him. His connection with insurance was not involved. Kitchin thus admitted liability through his agent, Williams, and later, after he assumed responsibility, the wreckage was cleared. The evidence was therefore properly admitted.

The third question raised is: "Was a jury question presented as to whether there was sufficient meeting of the minds so as to form a binding contract between Gary Steel and Kitchin covering the loss involved?"

This assignment was not argued at bar. The question as to whether the agreement existed was for the jury to decide, and Plaintiff's instruction P-2 properly submitted this question to the jury. Kitchin asked for Instruction "X", which

would have told the jury in detail the elements of an agreement such as the meeting of minds, etc. The court refused this instruction as being inapplicable to the evidence. There was no showing that Kitchin did not understand the agreement. His defense was a denial *in toto* that an agreement existed. He could hardly have understood or misunderstood an agreement which he contended did not exist.

The final assignment of error which was neither argued in defendant's brief nor at bar deals with the court's failure to set aside the jury's verdict on Kitchin's counterclaim and to grant a new trial on the ground that the verdict of the jury was inadequate. Kitchin asserted in the counterclaim that he was entitled to crane rental on the larger crane for 110.5 hours at $20 per hour, amounting to $2,210, and for rental on the smaller crane for 84 hours at $9.50 per hour, amounting to $798, making a total of $3,008.

Gary's answer to the counterclaim admitted that Kitchin was due a reasonable sum for the work (Kitchin having later erected the stack) but denied that the amount contended for was reasonable. Gary asserted that the job could have been completed within three days "but for the failure of the defendant (Kitchin) to perform the work in a workmanshiplike manner". Gary suggested that $480 would be adequate compensation. The jury found for Kitchin in the sum of $640, and the court entered judgment upon the verdict. We cannot say that the allowance was inadequate.

We are of the opinion that the case has been properly tried and the judgment of the lower court is

*Affirmed.*