# Robert David Hiett

## v.

# Lake Barcroft Community Association, Inc., et al.

Record No. 911395

June 5, 1992

Present: All the Justices

*Bernard S. Cohen (Sandra M. Rohrstaff; Cohen, Dunn & Sinclair*, on brief), for appellant.

*Joseph D. Roberts (Slenker, Brandt, Jennings & Johnson*, on brief), for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

The primary issue in this appeal is whether a pre-injury release from liability for negligence is void as being against public policy.

Robert D. Hiett sustained an injury which rendered him a quadriplegic while participating in the "Teflon Man Triathlon" (the triathlon) sponsored by the Lake Barcroft Community Association, Inc. (LABARCA). The injury occurred at the start of the swimming event when Hiett waded into Lake Barcroft to a point where the water reached his thighs, dove into the water, and struck his head on either the lake bottom or an object beneath the water surface.

Thomas M. Penland, Jr., a resident of Lake Barcroft, organized and directed the triathlon. He drafted the entry form which all participants were required to sign. The first sentence of the form provided:

> In consideration of this entry being accept[ed] to participate in the Lake Barcroft Teflon Man Triathlon I hereby, for myself, my heirs, and executors waive, release and forever discharge any and all rights and claims for damages which I may have or

m[a]y hereafter accrue to me against the organizers and sponsors and their representatives, successors, and assigns, for any and all injuries suffered by me in said event.

Evelyn Novins, a homeowner in the Lake Barcroft subdivision, asked Hiett to participate in the swimming portion of the triathlon. She and Hiett were both teachers at a school for learning-disabled children. Novins invited Hiett to participate as a member of one of two teams of fellow teachers she was organizing. During a break between classes, Novins presented Hiett with the entry form and he signed it.

Hiett alleged in his third amended motion for judgment that LABARCA, Penland, and Novins had failed to ensure that the lake was reasonably safe, properly supervise the swimming event, advise the participants of the risk of injury, and train them how to avoid such injuries. Hiett also alleged that Penland and Novins were agents of LABARCA and that Novins's failure to direct his attention to the release clause in the entry form constituted constructive fraud and misrepresentation.

In a preliminary ruling, the trial court held that, absent fraud, misrepresentation, duress, illiteracy, or the denial of an opportunity to read the form, the entry form was a valid contract and that the pre-injury release language in the contract released the defendants from liability for negligence. The trial court also ruled that such a release was prohibited as a matter of public policy only when it was included: (1) in a common carrier's contract of carriage; (2) in the contract of a public utility under a duty to furnish telephone service; or (3) as a condition of employment set forth in an employment contract.

Pursuant to an agreement between the parties, the trial court conducted an evidentiary hearing in which it determined that there was sufficient evidence to present to a jury on the issue of constructive fraud and misrepresentation. Additionally, the trial court ruled that as a matter of law Novins was not an agent of LABARCA, and it dismissed her from the case.

The remaining parties proceeded to trial solely on the issue whether there was constructive fraud and misrepresentation by the defendants such as would invalidate the waiver-release language in the entry form. After Hiett had rested his case, the trial court granted the defendants' motion to strike the evidence. This appeal followed.

Hiett first argues that the trial court erred in ruling that the pre-injury release provision in the entry form did not violate public policy. He contends that since the decision of this Court in *Johnson's Adm'x* v. *Richmond and Danville R.R. Co.*, 86 Va. 975, 11 S.E. 829 (1890), the law in Virginia has been settled that an agreement entered into prior to any injury, releasing a tortfeasor from liability for negligence resulting in personal injury, is void because it violates public policy. Hiett asserts that the later cases of this Court have addressed only the release of liability from property damage or indemnification against liability to third parties. Thus, he contends that the holding in *Johnson* remains unchanged. In response, LABARCA and Novins argue that the decisions of this Court since *Johnson* have established that pre-injury release agreements such as the one before us do not violate public policy. We disagree with LABARCA and Novins.

The case law in this Commonwealth over the past one hundred years has not altered the holding in *Johnson*. In *Johnson*, this Court addressed the validity of a pre-injury release of liability for future negligent acts. There, the decedent was a member of a firm of quarry workers which had entered into an agreement with a railroad company to remove a granite bluff located on the company's right of way. The agreement specified that the railroad would not be liable for any injuries or death sustained by any members of the firm, or its employees, occurring from any cause whatsoever.

The decedent was killed while attempting to warn one of his employees of a fast-approaching train. The evidence showed that the train was moving at a speed of not less than 25 miles per hour, notwithstanding the railroad company's agreement that all trains would pass by the work site at speeds not exceeding six miles per hour.

■ In holding that the release language was invalid because it violated public policy, this Court stated:

> [T]o hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct . . . can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void.

86 Va. at 978, 11 S.E. at 829. This Court emphasized that its holding was not based on the fact that the railroad company was a common carrier. Rather, this Court found that such provisions for release from liability for personal injury which may be caused by future acts of negligence are prohibited ''universally.'' 86 Va. at 978, 11 S.E. at 830.

■ As noted by Hiett, the cases following *Johnson* have not eroded this principle. Instead, this Court's decisions after *Johnson* have been limited to upholding the right to contract for the release of liability for property damage, as well as indemnification from liability to third parties for such damage.

■ In *C. & O. Ry. Co.* v. *Telephone Co.*, 216 Va. 858, 224 S.E.2d 317 (1976), this Court upheld a provision in an agreement entered into by the parties to allow the telephone company to place underground cables under a certain railway overpass. In the agreement, the telephone company agreed to release the C & O Railway Company from any damage to the wire line crossing and appurtenances. In upholding this property damage stipulation, this Court found that public policy considerations were not implicated. 216 Va. at 865-66, 224 S.E. at 322.

This Court upheld another property damage release provision in *Nido* v. *Ocean Owners' Council*, 237 Va. 664, 378 S.E.2d 837 (1989). There, a condominium unit owner filed suit against the owners' council of the condominium for property damage to his unit resulting from a defect in the common area of the condominium. This Court held that, under the applicable condominium by-laws, each unit owner had voluntarily waived his right to bring an action against the owners' council for such property damage. 237 Va. at 667, 378 S.E.2d at 838.[1]

■ Other cases decided by this Court since *Johnson* have upheld provisions for indemnification against future property damage claims. In none of these cases, however, did the Court address the issue whether an indemnification provision would be valid against a claim for personal injury.

In *Richardson - Wayland* v. *VEPCO*, 219 Va. 198, 247 S.E.2d 465 (1978), the disputed claim involved property damage only, although the contract provided that VEPCO would be indemnified against both property damage and personal injury claims. This

---

[1] Although the by-law at issue attempted to release the owners' council for injury to both persons and property, the issue before the Court involved only the property damage portion of the clause.

Court held that the provision for indemnification against property damage did not violate public policy. In so holding, this Court emphasized the fact that the contract was not between VEPCO and a consumer but, rather, that it was a contract made by VEPCO with a private company for certain repairs to its premises. 219 Va. at 202-03, 247 S.E.2d at 468.

This Court also addressed an indemnification clause covering liability for both personal injury and property damage in *Appalachian Power Co.* v. *Sanders*, 232 Va. 189, 349 S.E.2d 101 (1986). However, this Court was not required to rule on the validity of the clause with respect to a claim for personal injury, based on its holding that the party asserting indemnification was not guilty of actionable negligence. 232 Va. at 196, 349 S.E. at 106.

Finally, in *Kitchin* v. *Gary Steel Corp.*, 196 Va. 259, 83 S.E.2d 348 (1954), this Court found that an indemnification agreement between a prime contractor and its subcontractor was not predicated on negligence. For this reason, this Court held that there was no merit in the subcontractor's claim that the agreement violated public policy as set forth in *Johnson*. 196 Va. at 265, 83 S.E.2d at 351.

▪ We agree with Hiett that the above cases have not modified or altered the holding in *Johnson*. Therefore, we conclude here, based on *Johnson*, that the pre-injury release provision signed by Hiett is prohibited by public policy and, thus, it is void. *Johnson*, 86 Va. at 978, 11 S.E. at 829.

▪ Since we have held that the pre-injury release agreement signed by Hiett is void, the issue whether Novins acted as LABARCA's agent in procuring Hiett's signature will not be before the trial court in the retrial of this case. Nevertheless, Hiett argues that, irrespective of any agency relationship, Novins had a common law duty to warn Hiett of the dangerous condition of the uneven lake bottom. We disagree.

▪ The record before us shows that Lake Barcroft is owned by Barcroft Beach, Incorporated, and it is operated and controlled by Barcroft Lake Management Association, Incorporated. Further, it is undisputed that the individual landowners in the Lake Barcroft subdivision have no ownership interest in the Lake. Since Novins had no ownership interest in or control over the operation of Lake Barcroft, she had no duty to warn Hiett of any dangerous condition therein. *See Busch* v. *Gaglio*, 207 Va. 343, 348, 150 S.E.2d 110, 114 (1966). Therefore, Hiett's assertion that Novins had a duty to warn him of the condition of the lake bottom, fails as a matter of

law, and we conclude that the trial court did not err in dismissing Novins from the case.

Accordingly, we will affirm in part and reverse in part the judgment of the trial court, and we will remand this case for further proceedings consistent with the principles expressed in this opinion.[2]

*Affirmed in part,*
*reversed in part,*
*and remanded.*

---

[2] Based on our decision here, we do not reach the questions raised by the remaining assignments of error.