Shelley Jo BUETTNER,
Plaintiff–Appellant,

v.

R. W. MARTIN & SONS, INCORPO-
RATED, Defendant–Appellee,

and

Super Laundry Machinery Company, In-
corporated; Chicago New and Used
Laundry Equipment Company, Incorpo-
rated; Big Behn Laundry Equipment
Company, Incorporated; New Super
Laundry Machinery Company; Sharper
Finish, Incorporated; Chicago New and
Used Dry Cleaning & Laundry Equip-
ment Company, Incorporated; Kun Ho
Kim; Lawrence Leroy McClain, d/b/a
McClain Specialties, Individually; Tin-
gue, Brown & Company, Defendants.

No. 94–1356.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1994.

Decided Feb. 3, 1995.

**ARGUED:** Robert F. McMahan, Jr., Harris & Graves, P.A., Columbia, SC, for appellant. Alan Brody Rashkind, Furniss, Davis, Rashkind & Saunders, P.C., Norfolk, VA, for appellee.

Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Chief Judge ERVIN and Senior Judge PHILLIPS joined.

## OPINION

WILKINSON, Circuit Judge:

Appellant Shelley Jo Buettner appeals a district court order granting summary judgment in favor of appellee R. W. Martin & Sons, Inc. ("Martin"). Buettner brought suit against Martin alleging breach of an implied warranty of merchantability and negligent failure to warn after she was injured by a flatwork ironer which Martin sold to Buettner's employer. The district court concluded that Buettner's claims were barred by an express disclaimer in the sales contract between Martin and Buettner's employer and that no implied warranty of merchantability ran directly to Buettner, a third party user. *Buettner v. Super Laundry Mach.,* 857 F.Supp. 471, 474–76 (E.D.Va.1994). We affirm the judgment.

### I.

Appellant Shelley Jo Buettner was employed as a supervisor in the flatwork department of Shared Hospital Services ("SHS"), a commercial laundry in Portsmouth, Virginia. On the morning of October 31, 1990, as Buettner turned on a flatwork ironer in preparation for the day's work, her sweater became entangled in the feed drive unit at the front of the ironer, which resulted in the amputation of her right arm below the elbow.

SHS's president, Dale James Paradee, had begun the search for a used ironer in 1986 by contacting Lawrence Leroy McClain ("McClain"), an Illinois resident in business as a laundry equipment mechanic. McClain was experienced in the installation, maintenance, and safety of flatwork ironers and agreed to help SHS locate one. McClain discovered a used flatwork ironer located in a laundry in Cleveland, Ohio, which was offered for sale by R.W. Martin & Sons, Inc., an Ohio corporation in the business of buying, selling, and renovating laundry equipment. Paradee asked McClain to inspect the ironer for SHS and determine whether it was worth Martin's asking price. McClain conducted a pre-sale inspection. On his recommendation, SHS purchased the ironer in December 1986. Both a written sales proposal prepared by Martin and the sales invoice specified that the ironer was sold "as is." Buettner was not a party to the contract of sale and in fact was not aware of the purchase until the ironer arrived at SHS.

The ironer was shipped to SHS in April of 1987 and reassembled by SHS employees with McClain's assistance. When the ironer was originally manufactured and sold in 1970, no guard had been installed covering the feed drive roll, nor did SHS or McClain install such a guard during reassembly of the machine in Portsmouth. In fact, no flatwork ironers are known to have been manufactured between 1970 and the present day with a guard covering the feed drive roll, nor does it appear to be industry custom to install such guards.

After her injury, Buettner filed suit in the Circuit Court of the City of Portsmouth, Virginia against several defendants, alleging negligent design, negligent failure to warn, negligent failure to install safety devices, and breach of implied warranty of merchantability. Martin removed the case to the United States District Court for the Eastern District

of Virginia based on diversity of citizenship. After completion of discovery, both of the remaining defendants (Martin and McClain) moved for summary judgment. The district court granted summary judgment in favor of defendants Martin and McClain on all claims. Buettner appeals the order only as to defendant Martin.

## II.

■■ Buettner first argues that Virginia Code § 8.2–318 creates an implied warranty of merchantability for the benefit of remote users independent of any warranties to the purchaser created by the contract of sale. According to Buettner, because Martin did not deal directly with her in negotiating a disclaimer of warranties, the "as is" clause in the contract of sale, which disclaimed all implied warranties as to SHS, is not effective as to her.

We cannot agree. Under Virginia Code § 8.2–314, a warranty of merchantability is implied in every contract for the sale of goods *unless* the warranty is "excluded or modified" pursuant to § 8.2–316. Here Martin effectively disclaimed all warranties, including any implied warranty of merchantability, by selling the ironer "as is" to Buettner's employer; such a disclaimer is expressly authorized by Va.Code § 8.2–316(3)(a). Thus, no warranty arose under § 8.2–314 on which Buettner can now rely.

Buettner insists, however, that as a foreseeable user of the ironer, she can rely on an implied warranty of merchantability running directly to her, independent of any warranties created by the contract between Martin and SHS. Buettner bases her interpretation on the text of § 8.2–318, which reads:

**When lack of privity no defense in action against manufacturer or seller of goods.**—Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods. . . .

As Buettner notes, the Virginia legislature chose to adopt this provision in place of the first alternative version of U.C.C. § 2–318, which simply extends warranties to certain third party beneficiaries.[1]

According to Buettner, the legislature, by "rejecting" the U.C.C.'s express reliance on a "third party beneficiary" theory, specifically intended to create an independent warranty for remote users.

Buettner misconceives the purpose of the Virginia statute. Rather than rejecting a third party beneficiary theory of warranty liability, the Virginia legislature simply chose to adopt a provision creating a broader class of beneficiaries than that created by the U.C.C. provision, which is limited to household guests and members. Such a broad statute was in keeping with the Virginia anti-privity statute that predated the current § 8.2–318. *See* Va.Code § 8.2–318, Virginia Comment. Contrary to Buettner's contention, § 8.2–318 does not create for the benefit of nonpurchasing users an independent warranty of merchantability but rather simply preserves for remote users the warranties already enjoyed by an immediate purchaser. Moreover, the statute in no way purports to limit a seller's ability to disclaim warranties to foreseeable users.

The U.C.C. Official Comment is instructive in this regard. *See In re Varney Wood Products, Inc.,* 458 F.2d 435, 437 (4th Cir. 1972) (although the Official Comments of the Uniform Commercial Code are not binding upon the court, they nonetheless provide valuable guidance). Although, as Buettner notes, the Virginia anti-privity statute differs from the U.C.C. model provision, the intent

---

[1]. The U.C.C. provision reads as follows:

**Third party beneficiaries of warranties express or implied.** A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

of both statutes is essentially the same: to confer on foreseeable users of a product both the benefits and limitations of warranties provided to the purchaser. The Official Comment provides: "To the extent that the contract of sale contains provisions under which warranties are excluded or modified, or remedies for breach are limited, such provisions are equally operative against beneficiaries of warranties under this section." U.C.C. § 2–318, Official Comment 1. According to this rationale, Buettner can enjoy no more contractual rights than are enjoyed by the purchaser, SHS. *See, e.g., Goodbar v. Whitehead Bros.*, 591 F.Supp. 552, 567 (W.D.Va.1984) (in general, a third party user "can rise no higher than [the] purchaser through which he obtained the implied warranty"), *aff'd sub nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985).

The cases cited by Buettner for the contrary proposition are inapposite. For instance, Buettner cites *Brockett v. Harrell Bros., Inc.*, 206 Va. 457, 143 S.E.2d 897 (1965), for the proposition that "[t]he obvious purpose and effect of [the anti-privity statute that preceded § 8.2–318] . . . is to insure the implied warranty of fitness by the manufacturer to the consumer, despite the lack of privity between the two." *Id.* at 901. *See also Swift & Co. v. Wells*, 201 Va. 213, 110 S.E.2d 203, 208–09 (1959). *Brockett*, however, dealt with an implied warranty of fitness imposed by the common law on manufacturers of food. *Brockett*, 143 S.E.2d at 900 (an "implied warranty of fitness is imposed by operation of law [on sellers of food] as a matter of public policy for the protection of health and life"). *See also Wells*, 110 S.E.2d at 206 ("Since an early date, the courts have made a distinction with respect to warranties between the sale of food and other articles of commerce."). Neither *Brockett* nor *Wells* dealt with the question whether a seller could disclaim a warranty to the ultimate user by disclaiming the warranty to the purchaser. Moreover, both *Brockett* and *Wells* pre-dated the enactment of the current § 8.2–318 and thus have little bearing on our interpretation of that provision.

■ We likewise reject Buettner's suggestion that a seller must negotiate a warranty disclaimer with an individual foreseeable user despite the inclusion of an otherwise valid disclaimer in the contract of sale. Were we to hold otherwise, a seller would be virtually incapable of disclaiming any implied warranties as to all foreseeable users, contrary to the clear intent of § 8.2–316. Recognizing that any warranty runs through the purchaser to foreseeable users is sound policy: remote users enjoy no fewer contractual rights than do the purchasers, while employer-purchasers, who bear the major portion of costs of employee injuries and are in the best position to evaluate risks to employees who will be using the goods, are given appropriate incentives to negotiate warranties with vendors. *See Reibold v. Simon Aerials, Inc.*, 859 F.Supp. 193, 199 (E.D.Va.1994) ("[A]llowing employer-purchasers to receive the benefit of their bargain with the manufacturer should result in economically efficient transactions which account for the employees' potential injury costs.").

### III.

■ Buettner further claims that to enforce the disclaimer in the contract of sale against her would be unconscionable, since she was not a party to the contract of sale. Again, this contention must fail.

Under the factors set out in *Carlson v. General Motors Corp.*, 883 F.2d 287, 293 (4th Cir.1989), *cert. denied*, 495 U.S. 904, 910, 110 S.Ct. 1923, 1936, 109 L.Ed.2d 287, 299 (1990), the "as is" provision included in the sales contract between Martin and SHS was not unconscionable as to SHS. The district court in this case properly noted the "commercial setting of the contract" and concluded that it "certainly [could not] glean unconscionability in this waiver of warranty with respect to SHS." *Buettner*, 857 F.Supp. at 477 n. 4. Buettner points to no Virginia authority, nor have we discovered any, which provides that an otherwise valid and effective warranty disclaimer that is not unconscionable as to the parties to a sales contract can be unconscionable and unenforceable as to a party's employees.

Moreover, adoption of Buettner's unconscionability arguments would create via unconscionability doctrine the very independent warranty to third party users that we have

concluded above does not exist under Virginia law. *Buettner,* 857 F.Supp. at 476–77. Were we to find the inclusion of a warranty disclaimer in the sales contract unconscionable as to Buettner simply because she was not a party to the contract, we would in effect hold every such limitation of warranty unconscionable with respect to all foreseeable nonpurchasing users. This result clearly would run contrary to § 8.2–316, which allows vendors to disclaim all implied warranties so long as the requirements of the statute are met.[2]

## IV.

 Finally, Buettner argues that Martin had a duty to warn her of the dangers associated with the feed drive unit in which clothing could become entangled and specifically to warn her of the absence of a guard covering the feed drive roll.

As the district court noted, Buettner's employer was knowledgeable about the hazards associated with the flatwork ironer and specifically was aware of the dangers of wearing loose clothing that could become entangled in the machinery. *Buettner,* 857 F.Supp. at 478. Where a seller or manufacturer has reason to believe that an employer would be acting to protect the safety of its employees, the seller may justifiably rely upon that fact. *Willis v. Raymark Indus., Inc.,* 905 F.2d 793, 797 (4th Cir.1990). *See also Goodbar,* 591 F.Supp. at 560 ("in Virginia there is no duty on product suppliers to warn employees of knowledgeable industrial purchasers as to product-related hazards"). Here Martin had every reason to believe that SHS, a commercial laundry with experience operating flatwork ironers, would exercise care in instructing its employees in the correct use of the ironer. It is also worth noting that after fourteen years' experience with flatwork ironers, Buettner herself was well aware of the dangers involved. In sum, we affirm the district court's dismissal of Buettner's failure to warn claim.

## V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

**2.** Buettner also cites *Hiett v. Lake Barcroft Community Ass'n, Inc.,* 244 Va. 191, 418 S.E.2d 894 (1992), for the proposition that because she has sustained a severe personal injury, a limitation of warranty in this case would be void as contrary to Virginia public policy. *Hiett* is, however, inapplicable. *Hiett* held a pre-injury release from liability for negligence void as against public policy. 418 S.E.2d at 897. The disclaimer involved in this case is not a disclaimer for liability for negligence but rather a complete exclusion of warranties expressly permitted by § 8.2–316. Nor does Va.Code § 8.2–719(3) prohibit the disclaimer; that section merely establishes that limitations of remedies in personal injury cases involving consumer goods are prima facie unconscionable. The flatwork ironer that injured Buettner clearly is not a consumer good.