Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

| Argued April 20, 2004 | Decided July 16, 2004 |
|---|---|

No. 03-7121

ROCHELLE JAFFE, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF EVE JAFFE,
APPELLANT

v.

PALLOTTA TEAMWORKS, A CALIFORNIA CORPORATION, ET AL. AND
UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION,
ON BEHALF OF ITS R. ADAMS COWLEY SHOCK TRAUMA CENTER,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01048)

————

*Frederic W. Schwartz, Jr.* argued the cause for appellant. With him on the briefs was *James W. Taglieri.*

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*William J. Carter* argued the cause for appellees. With him on the brief were *Jan E. Simonsen* and *Neal M. Brown*.

Before: ROGERS, GARLAND and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal presents a choice of law question arising from the death of a young woman, Eve Jaffe, in Virginia while participating in a 300–mile, 4–day bicycle ride to raise funds for charity. Rochelle Jaffe, in her personal capacity and on behalf of the estate of her daughter, Eve Jaffe, appeals the grant of summary judgment in her negligence and wrongful death action to Pallotta TeamWorks ("Pallotta"), which sponsored and organized the bike ride, and the University of Maryland Medical System Corporation ("UMMS"), which provided, in Virginia, the medical services in dispute. The district court, applying the law of the District of Columbia, ruled that a pre-participation waiver executed by Eve Jaffe absolved Pallotta and UMMS from liability. We hold, upon comparing which jurisdiction has the more substantial interests, that the District of Columbia would apply the law of Virginia, and not that of the District of Columbia regarding the effect of the waiver, and that the waiver is void as against public policy under Virginia law. Accordingly, we reverse the grant of summary judgment and remand the case to the district court for further proceedings.

**I.**

On *de novo* review of the grant of summary judgment, the court reviews the evidence most favorably to the non-moving party, according her all favorable inferences. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994); FED. R. CIV. P. 56 (2004). Pallotta is a California corporation that operates "AIDSRide" events — multiple-day, non-competitive bicycle rides that raise funds for AIDS-related charities — throughout the United States. Participants collect pledges, and Pallotta handles logistics such as securing corporate sponsorship, selecting a route, and arranging for services for the riders — such as, in this case, arranging for the University of

Maryland Medical System Corporation ("UMMS") to provide medical care for the riders. Eve Jaffe died while participating in the fifth annual Washington, D.C. AIDSRide. This event, covering 300 miles over four days, was scheduled for June 22–25, 2000, with over 1,600 bicycle riders, beginning in Raleigh, North Carolina, crossing through Virginia, and ending on the National Mall in Washington, D.C.

Before commencement of AIDSRide, Pallotta required all participants to read and sign an entry form that included a section titled "Waiver of Negligence & Complete Release of Liability." The form calls for the signatories to acknowledge that they are "aware that serious injuries occur during bicycle riding" and that they "may be seriously injured or killed as a result." The form further states that "[i]n consideration for being permitted to participate in Washington, D.C. AIDSRide 5 ..., I agree to assume all risks and to release and hold harmless ... [Pallotta] ... [UMMS], or any other Ride Medical Team member" who "through negligence, carelessness or any other cause, might otherwise be liable to me."

Eve Jaffe, a 31–year-old resident of the District of Columbia who had also participated in AIDSRide the previous year, executed this entry form on June 2, 2000 in the District of Columbia. A few weeks later, on June 22, she began the bicycle ride in Raleigh, North Carolina. On the afternoon of the first day, however, while traveling through Virginia, she went to a medical aid station set up for the riders and complained that she felt nauseated and dizzy. She was given intravenous fluids by the volunteers at the station, but her condition worsened and she began vomiting, then lost consciousness as her blood pressure dropped. An ambulance took her to the Greensville Memorial Hospital, where she died the following day without regaining consciousness.

Rochelle Jaffe filed suit for negligence and wrongful death against Pallotta and UMMS, on her own behalf and as representative of her daughter's estate. She alleged that her daughter's death could have been prevented if not for the negligence of Pallotta and UMMS. Specifically, as relevant here, she alleged and offered expert opinion evidence that the

aid station was manned by untrained volunteers who overhydrated her daughter, and that, to a reasonable medical certainty, Eve Jaffe died of global brain hypoxia and would have survived if proper medical care had been provided or an ambulance with advanced life support had been available to transport her to the hospital. UMMS denied these allegations and moved to dismiss the complaint, and in the alternative for summary judgment, on the grounds that the complaint was time-barred under Virginia's two year statute of limitations, and that liability was barred by Eve Jaffe's waiver. Pallotta also moved for summary judgment on the basis of the waiver.

The district court granted summary judgment to Pallotta and UMMS on the basis of the waiver. Because the events leading up to Eve Jaffe's death took place in Virginia, the district court ruled that Virginia tort law would govern the underlying negligence action, but because the waiver was executed in the District of Columbia, Eve Jaffe was a resident of the District of Columbia, and AIDSRide ended in the District of Columbia and raised money for local charities, the court ruled that the District of Columbia law, rather than Virginia law, should control its effect. The court then concluded that District of Columbia law would recognize prospective waivers for personal injury claims in the absence of unfairness in the conditions under which the waiver was signed, and that the waiver was thus valid.

## II.

On appeal, Ms. Jaffe contends that the district court, in relying on factors not dispositive under District of Columbia law, failed to weigh properly the governmental interests of Virginia against those of the District of Columbia. We first review the relevant law in the two jurisdictions, and then compare the interests of those jurisdictions in the effect of the waiver.

## A.

In Virginia, where any alleged negligence leading to Eve Jaffe's death occurred, Eve Jaffe's release has no legal effect:

Virginia unambiguously rejects pre-injury releases as "pro-hibited by public policy and [ ] thus [ ] void." *Hiett v. Lake Barcroft Community Ass'n*, 418 S.E.2d 894, 897 (Va. 1992). In the District of Columbia, on the other hand, where Eve Jaffe resided, executed the entry form, and was destined, along with over a thousand other riders and the funds they had raised, it is at least arguable that the waiver would be enforced. The case, therefore, presents a classic choice of law question: which jurisdiction's law governs the effect of the waiver? Or to put it more aptly given the nature of diversity jurisdiction: which jurisdiction's law would the courts of the forum, the District of Columbia, apply to determine the effect of the release? *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).

Agreements of the type that Pallotta had Eve Jaffe exe-cute — a release prospectively absolving itself, and UMMS, of liability for any future negligence that might cause person-al injury — raise difficult public policy issues. At common law, such agreements were void, the rule being that "the law did not permit a person to exculpate himself by contract from the legal consequences of his negligence." *Maiatico v. Hot Shoppes, Inc.*, 287 F.2d 349, 350 (D.C. Cir. 1961). As with the proscription against prospective waiver of tort liability for intentional torts or for strict liability, such agreements inter-fere with the ability of the state to ensure that persons do not put each other at risk of bodily harm, a policy that often serves goals beyond the protection of the immediate contract-ing party. On the other hand, any rule limiting the ability of consenting individuals to contract freely will prevent mutually beneficial exchanges, and risk-tolerant individuals may stand to gain from being permitted to trade away their entitlement to non-negligent treatment. Similarly, as is often the case with recreational or charitable activities, persons involved in group efforts may jointly agree to sign such waivers so as to protect shared resources from each others' legal claims, meri-torious or otherwise.

Given the tradeoffs and policy issues presented by pre-injury releases, it is no surprise that different jurisdictions have varied positions on their validity. Some jurisdictions

widely enforce prospective releases so long as they are clear. *See, e.g., Malecha v. St. Croix Valley Skydiving Club*, 392 N.W.2d 727 (Minn. 1986); *Blide v. Rainier Mountaineering*, 636 P.2d 492, 493 (Wash. 1982); *Morrow v. Auto Championship Racing Ass'n*, 291 N.E.2d 30, 32 (Ill. 1972). A few categorically prohibit them, either generally or in specific contexts. *See, e.g.*, *Coughlin v. T.M.H. Int'l Attractions*, 895 F. Supp. 159, 162 (W.D. Ky. 1995); *Hiett*, 418 S.E.2d at 896; N.Y. Gen. Oblig. Law §§ 5–321 through 5–326 (2004). Still others honor them generally, but impose much more rigorous scrutiny of the parties' relative bargaining power than they do for other types of contract. *See, e.g., Tunkl v. Regents of Univ. of Cal.*, 383 P.2d 441, 445–46 (Cal. 1963). And some jurisdictions refuse to recognize them in areas where the state has a heightened regulatory interest in ensuring the non-negligent provision of certain licensed services, such as medicine, *see, e.g.*, *Cudnik v. William Beaumont Hosp.*, 525 N.W.2d 891 (Mich. App. 1995); *Olsen v. Molzen*, 558 S.W.2d 429 (Tenn. 1977); *Tunkl*, 383 P.2d at 447; or in furthering other safety policies, such as premises liability, *see, e.g.*, *Dalury v. S–K–I, Ltd.*, 670 A.2d 795, 800 (Vt. 1995).

Where the District of Columbia falls on this spectrum is not obvious. There is no definitive statute or case law indicating whether the District of Columbia would recognize a prospective liability waiver for a personal injury claim at all, and, if it did, what conditions and limitations, if any, it would first require. Cases on closely related subjects go either way: parties can prospectively waive claims of negligently inflicted economic harm, *see, e.g., Houston v. Sec. Storage Co. of Washington*, 474 A.2d 143, 144 (D.C. 1984) (per curiam); *see also Hot Shoppes,* 287 F.2d at 350–51, but cannot waive, absent contributory negligence, the duty of care to which they are entitled under certain public safety statutes. *See Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980)*; Martin v. George Hyman Const. Co.*, 395 A.2d 63, 71–74 (D.C. 1978). In Virginia there is no such ambiguity: Virginia continues to follow the common law rule that personal injury claims cannot be waived prospectively. *See Hiett*, 418 S.E.2d at 896.

**B.**

To decide which jurisdiction's law applies in tort cases, the District of Columbia follows the "substantial interest" position of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) § 145, under which the court will "balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more 'substantial interest' in the resolution of the issue." *Lamphier v. Washington Hosp. Ctr.*, 524 A.2d 729, 731 (D.C. 1987). This inquiry is to include consideration of several contacts, including (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship is centered." *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002) (quoting RESTATEMENT, § 145(2)).

Because Eve Jaffe's death and the medical care leading to it occurred in Virginia, the district court ruled that Virginia tort law governed the underlying tort action. This ruling was correct, as was the district court's realization that a separate analysis was required to decide which law should govern the effect of the waiver, for, under District of Columbia choice of law rules, "[d]ifferent law may apply to different issues in a lawsuit." *Logan v. Providence Hospital*, 778 A.2d 275 at 280 (D.C. 2001); *see also* RESTATEMENT, § 145(2) cmt. d. Application of the same rules, however, should have revealed to the court that Virginia law governs the effect of the waiver as well.

In "construing a contract where the laws of two jurisdictions are involved," the District of Columbia "applies the law of the state which has the 'more substantial interest in the resolution of the issue.'" *Coulibaly v. Malaquias*, 728 A.2d 595, 606 (D.C. 1999) (quoting *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970)). Irrespective of whether the effect of the waiver is framed as a question of contract law or a question of tort liability, it is clear that the District of Columbia's interest in the waiver's legal effect is less than Virginia's.

Virginia's interests in invalidating the waiver are substantial. The waiver directly affects Virginia's ability, through its substantive tort law, to regulate the safety of conduct within its borders, including the provision of medical services. In *Lamphier*, a similar case, the District of Columbia Court of Appeals faced a situation where a health care corporation that had allegedly caused negligent injury through its services in the District of Columbia tried to use a post-injury settlement entered into in Maryland by the plaintiff and a different party involved in the accident as a defense to liability; Maryland law tends to read such settlements broadly to protect the settling tortfeasor from later contribution claims by non-settling tortfeasors, whereas the District of Columbia does not. 524 A.2d at 733. The court rejected the argument that Maryland law should govern the effect of the release, notwithstanding its having been executed in Maryland between Maryland residents, because the District of Columbia "has a strong and recognized interest in determining the liability of District health care corporations for negligence attributable to them that occurs within the District." *Lamphier*, 524 A.2d at 731. A similar situation is presented in the instant case. Virginia has a strong policy against recognizing prospective liability waivers for personal injury claims, in order to preserve the incentives for conduct that does not place people at risk of bodily injury. *See Hiett*, 418 S.E.2d at 897. Not only is this public safety policy directly implicated here, but if parties entering a contract to provide medical services within Virginia could evade this policy simply by executing the contract elsewhere, the policy would be easily circumvented.

Virginia's interest in public safety in the instant case is not substantially diluted by the fact that AIDSRide also traveled through two other jurisdictions. While the ride began in Raleigh, North Carolina, and ended in the District of Columbia, the court can take judicial notice of a map, *see Washington Water Power Co. v. FERC*, 775 F.2d 305, 328 n.11 (D.C. Cir. 1985), and note that the vast bulk of the ride's route, and hence the chief place in which Pallotta and UMMS were responsible for the riders, was within Virginia. Nor is Virginia's interest in regulating the safety of recreational events

and medical services within the state meaningfully diminished by the fact that it is a non-resident who died from the alleged negligence. Virginia obviously has an interest in preventing non-residents from being negligently injured or killed within its borders. And, in any event, the organizers of large recreational events, as well as medical service providers, presumably do not tailor the level of care they provide based on the residence of individual participants or patients; the tort liability exposure they face toward non-residents will likely also influence the level of care they observe toward residents, and vice versa.

The District of Columbia's interests in the effects of the waiver, on the other hand, are much more attenuated. While Eve Jaffe was a resident of the District of Columbia, this means little: she would not benefit from application of District of Columbia law as opposed to Virginia law, and as Pallotta and UMMS are incorporated in California and Maryland, respectively, any interest the District of Columbia might have in protecting its residents is not implicated here. *Cf. District of Columbia v. Coleman*, 667 A.2d 811, 817 (D.C. 1995); *Kaiser Foundation Health Plan v. Rose*, 583 A.2d 156, 159 (D.C. 1990); *Lamphier*, 524 A.2d at 731. Nor is the fact that she executed the waiver in the District of Columbia of much significance when the services provided by Pallotta and UMMS during the bicycle ride to participating riders would be performed mostly in Virginia.

Where the District of Columbia does have some interest in the effect of the waiver is that it operates to protect funds raised by a charitable event ending in the District of Columbia and raising money for District of Columbia area charities. The District of Columbia might, therefore, have an interest in protecting the funds because District of Columbia residents suffering from AIDS will benefit from them and doing so might make the District of Columbia an attractive and low-liability-risk destination for similar fundraising events in the future. Two factors, however, dilute this interest in the instant case.

First, nothing in the record indicates that the charitable funds raised by Washington, D.C. AIDSRide 5 are destined only to the District of Columbia, and not at least in part to AIDS-related charities serving locations in northern Virginia that are part of the District of Columbia metropolitan area. It is impossible to gauge, on the record before the court, whether the District of Columbia's interest in the charitable funds is any more meaningful than Virginia's.

Second, and more importantly, it is not clear that the District of Columbia would have a policy of protecting the charitable funds by enforcing the waiver. The District of Columbia has no recognizable policy, either way, on the acceptability of prospective liability waivers for personal injury claims. The absence of such a policy diminishes further any interest it might have in having its own law decide the effect of Eve Jaffe's waiver. In *Logan v. Providence Hospital*, 778 A.2d at 278–80, another choice-of-law case involving the effect of an out-of-state post-injury release on a tort claim arising in the District of Columbia, the D.C. Court of Appeals applied Maryland rather than District of Columbia law to determine the legal effect of the release, in part out of deference to the fact that Maryland had a firm public policy on the offsets created by third-party settlements whereas the District of Columbia did not. *Id*. at 279. It stands to reason that the District of Columbia would similarly defer to Virginia on this point in the instant case.

In short, Virginia has a public policy which is directly implicated by the prospective waiver executed by Eve Jaffe, whereas the interests of the District of Columbia are at best attenuated, if it has a policy interest in the waiver at all. Under the circumstances, the district court erred when it applied District of Columbia law to determine the legal effect of the prospective liability waiver Eve Jaffe executed in order to participate in the AIDSRide. Virginia's interest in the matter is more substantial, and Virginia's interest is to see the waiver invalidated. Accordingly, we reverse the grant of summary judgment to Pallotta and UMMS, and we remand the case to the district court for further proceedings.