Present:  Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Stephenson, S.J.

W. R. HALL, INC.

OPINION BY
v.  Record No. 060717     JUSTICE LAWRENCE L. KOONTZ, JR.
March 2, 2007
HAMPTON ROADS SANITATION DISTRICT

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles D. Griffith, Jr., Judge

The sole issue in this appeal is whether two indemnification provisions in a construction contract are void as against public policy insofar as they entitle the indemnitee to be reimbursed by the indemnitor for costs and expenses incurred in the defense of a personal injury claim by a third party.

BACKGROUND

The relevant facts are undisputed.  W. R. Hall, Inc. ("W. R. Hall"), a construction company, entered into a contract with the Hampton Roads Sanitation District ("HRSD") whereby W. R. Hall would install or replace various sewer lines in the City of Norfolk.  One of these sewer lines crossed under a set of railroad tracks owned by the Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line").  HRSD had previously obtained the authority to install this sewer line on Belt Line's property by means of a utility line agreement between HRSD and Belt Line. The utility line agreement contained an indemnity provision whereby HRSD agreed to "be responsible for and save harmless Belt Line from and against any and all detriment, damages,

losses, claims, demands, suits, costs, or expenses" arising by reason of the installation of the sewer line on Belt Line's property.

On the morning of December 8, 2003, W. R. Hall's crew was in the process of completing the installation of the sewer line passing under Belt Line's railroad tracks. At that time, a Belt Line train was stopped on the tracks separating certain members of W. R. Hall's crew on one side of the tracks from members on the other side. A member of W. R. Hall's crew, Joshua G. Collins, attempted to cross over the tracks between two train cars. The train lurched forward and crushed Collins' foot between two couplings.

Collins filed a personal injury negligence action against Belt Line. Pursuant to the indemnity provision in the utility line agreement between HRSD and Belt Line described above, which is not at issue in this appeal, HRSD assumed Belt Line's defense against Collins' lawsuit, along with all costs and expenses attendant thereto. Subsequently, HRSD demanded that W. R. Hall pay the costs and expenses HRSD incurred in defending Collins'

suit against Belt Line.[1]  HRSD cited two provisions in its

contract with W. R. Hall that HRSD claimed entitled it to

indemnification.  The first of these provisions is set forth in

Article 6.16[2] of the contract and states, in relevant part, that:

> [W. R. Hall] shall assume full responsibility for
> any damage to any such land or area [on which the work
> is to be done], or to the owner or occupant thereof or
> of any adjacent land or areas, resulting from the
> performance of the Work.  Should any claim be made by
> any such owner or occupant because of the performance
> of the Work, [W. R. Hall] shall promptly settle with
> such other party by negotiation or otherwise resolve
> the claim by arbitration or other dispute resolution
> proceeding or at law.  [W. R. Hall] shall, to the
> fullest extent permitted by Laws and Regulations,
> indemnify and hold harmless [HRSD] and anyone directly
> or indirectly employed by any of them from and against
> all claims, costs, losses and damages arising out of
> or resulting from any claim or action, legal or
> equitable, brought by any such owner or occupant
> against [HRSD] or any other party indemnified
> hereunder to the extent caused by or based upon [W. R.
> Hall's] performance of the Work.

The second provision HRSD cited is set forth in Article 6.31

of the contract and states, in relevant part, that:

---

[1]Collins' lawsuit against Belt Line was stayed pending the resolution of HRSD's indemnity proceeding against W. R. Hall.

[2]HRSD did not refer to Article 6.16 in its original pleading, but the trial court permitted such a reference by a subsequent order.

> [W. R. Hall] shall indemnify and hold harmless [HRSD] against all claims, costs, losses and damages . . . caused by, arising out of or resulting from the performance of the Work, provided that any such claim, cost, loss or damage: (i) is attributable to bodily injury, sickness, disease or death . . . and (ii) is caused in whole or in part by any negligent act or omission of [W. R. Hall], any Subcontractor, any Supplier, any person or organization directly or indirectly employed by any of them to perform or furnish any of the Work or anyone for whose acts any of them may be liable, regardless of whether or not caused in part by any negligence or omission of a person or entity indemnified hereunder.

After W. R. Hall refused HRSD's demand for indemnity, HRSD filed a petition in the trial court requesting a declaratory judgment that these contractual indemnity provisions obligated W. R. Hall to indemnify and hold harmless HRSD for any and all expenses arising from Collins' lawsuit. In a responding trial brief, W. R. Hall maintained that Articles 6.16 and 6.31 of the parties' contract are not applicable under the facts of this case. W. R. Hall also maintained that these provisions are void as against public policy insofar as they apply to personal injuries, citing Johnson v. Richmond & Danville R.R. Co., 86 Va. 975, 978, 11 S.E. 829, 829 (1890) and Hiett v. Lake Barcroft Community Ass'n, 244 Va. 191, 196, 418 S.E.2d 894, 897 (1992).

The trial court held a hearing on the issues of whether the contractual indemnity provisions were triggered in this case and, if so, whether they were nonetheless void as against public policy. Finding that Article 6.16 and Article 6.31 were

triggered by the facts and circumstances of this case and that neither was void as against public policy, the trial court ruled that HRSD was entitled to indemnity from W. R. Hall under both provisions.[3]

Accordingly, the trial court entered an order on January 12, 2006 requiring that W. R. Hall indemnify HRSD for all expenses, damages, attorneys' fees and costs arising out of Collins' suit against Belt Line.  This appeal followed.

DISCUSSION

W. R. Hall's sole assignment of error asserts that "[t]he trial court erred by finding that the indemnification provisions contained within the contract between HRSD and [W. R.] Hall are not contrary to public policy insofar as they apply to future acts of negligence that result in bodily injury."  Thus, the

_____

[3]In discussing whether HRSD's damages were "caused in whole or in part by a negligent act or omission of [W. R. Hall]" for purposes of Article 6.31, the trial court indicated that Collins was negligent for crossing the railroad tracks between the train cars and that W. R. Hall was negligent for failing to take adequate safety precautions.  Because we are not concerned here with the negligence issues that ultimately will be determined in Collins' suit against Belt Line, we express no opinion on these issues.

5

applicability of these indemnification provisions to the facts of this case are not at issue in this appeal. Our analysis of the enforceability of indemnity provisions pertaining to losses arising from personal injury in Estes Express Lines, Inc. v. Chopper Express, Inc., 273 Va. ___, ___ S.E.2d ___ (2007) (this day decided) is instructive.

In that case, the plaintiff, Estes Express Lines, was a vehicle leasing company that had leased a number of trucks to Chopper, a trucking company. A Chopper employee was subsequently injured while using one of the leased trucks and sued Estes and another party for negligence. Estes reached a mediated settlement with the injured party. Id. at ___, ___ S.E.2d at ___.

Estes then sought indemnity from Chopper under a provision in the lease agreement whereby Chopper agreed to indemnify Estes for:

> Any and all loss, cost, claim, expense, cause of action, loss of use and liability by reason of injury (including death) to persons or damage to property arising out of the use, operation, ownership, maintenance or control of a [leased] Vehicle whether covered by insurance or not, including claims in excess of insurance limits and all claims determined not to be covered by insurance irrespective of who, among [Chopper] or its insurance carrier or others, may be the cause for such failure of coverage or recovery in excess of coverage.

Id. at ___, ___ S.E.2d at ___.

The trial court sustained a demurrer filed by Chopper, accepting Chopper's contention that, under Johnson and Hiett, an indemnity provision whereby a party indemnifies itself against liability for personal injury caused by its own future negligence is void as against public policy. We reversed, holding that such provisions are not void as against public policy and are enforceable. In doing so, we concluded that since indemnity provisions do not bar the injured party from recovery from the tortfeasor and that it was unlikely that a party would fail to exercise ordinary care based on the mere possibility of indemnity, such provisions do not implicate the same public policy concerns that counsel against enforcement of the pre-injury release provisions addressed in Johnson and Hiett. Id. at ___, ___ S.E.2d at ___. Estes, therefore, establishes that a contractual provision whereby a party indemnifies itself against losses incurred as the result of personal injury caused by its own future negligence is enforceable and does not violate the public policy of the Commonwealth.

The only distinction between the principal assertion made by the indemnitor in Estes and this case is that here, W. R. Hall contends that any indemnity provision entitling a party to be indemnified for losses resulting from the negligent infliction of personal injuries, even those not caused by or otherwise related

7

to the indemnitee's own negligence, are void. In light of our holding in Estes, to accept W. R. Hall's argument we would have to hold that it is not acceptable for a party to indemnify itself against losses from personal injury for which it was not at fault but is acceptable when the party's own negligence caused the injury. We will not adopt such an inconsistent position. Thus, we reject W. R. Hall's argument.

Turning to the specific indemnity provisions at issue in this case, we hold that they are not in violation of any public policy of the Commonwealth. In Article 6.16, W. R. Hall agreed to indemnify HRSD for any losses incurred as a result of damage to Belt Line or Belt Line's property. Clearly, this provision was based in part on the fact that W. R. Hall was the party actually performing the construction work on Belt Line's property and, thus, was in the best position to prevent damage to Belt Line and its property.

In this case, Collins' lawsuit against Belt Line caused Belt Line to seek indemnity under the utility line agreement in the form of HRSD assuming the defense of the lawsuit. Consequently, HRSD sought indemnity from W. R. Hall for the costs and expenses of defending the lawsuit. This series of events was predicated upon contractual indemnity provisions negotiated at arm's length and agreed to by the parties. To the extent that Article 6.16 of

8

the contract between HRSD and W. R. Hall has been determined to be applicable to this factual scenario, it is not repugnant to the public policy of the Commonwealth.  See Shuttleworth, Ruloff & Giordano, P.C. v. Nutter, 254 Va. 494, 498, 493 S.E.2d 364, 366 (1997) ("the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes").

Article 6.31 of the parties' contract is also clearly not in violation of public policy.  In that provision, W. R. Hall agreed to indemnify HRSD for any loss arising out of or resulting from the performance of the construction work if such loss was attributable to bodily injury and caused, in whole or in part, by W. R. Hall's negligence.  This provision operates to place the ultimate burden for a personal injury upon the negligent party causing that injury.  The trial court found that negligence by W. R. Hall, at least in part, led to Collins' injury, thus triggering Article 6.31 when HRSD subsequently assumed the costs and expenses of defending the lawsuit filed by Collins against Belt Line.  The operation of Article 6.31 in this manner does not constitute a violation of public policy.

CONCLUSION

For these reasons, as well as the reasons stated in Estes, we reject W. R. Hall's assertion that a contractual

9

indemnification provision is void as against public policy insofar as it indemnifies a party against liability for future acts of negligence causing personal injury.  Accordingly, the trial court correctly ruled that the indemnity provisions in Article 6.16 and Article 6.31 are not void as against public policy and are enforceable.  The judgment of the trial court will therefore be affirmed.

<u>Affirmed</u>.