Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Stephenson, S.J.

ESTES EXPRESS LINES, INC., ET AL.

OPINION BY
v. Record No. 061302       JUSTICE LAWRENCE L. KOONTZ, JR.
                                       March 2, 2007
CHOPPER EXPRESS, INC.


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

The sole issue in this appeal is whether an indemnity provision in a vehicle lease agreement is void as against public policy insofar as the provision would entitle a party to indemnification for liability incurred as the result of personal injuries caused by its own negligence.[1]

BACKGROUND

The relevant facts are undisputed. Estes Express Lines, Inc. and Estes Leasing (collectively "Estes") engage in the business of leasing trucks. On April 15, 1996, Estes entered into a written lease agreement to lease several trucks to Chopper Express, Inc. ("Chopper"), a trucking company.

Section 18 of the parties' lease agreement contains an indemnity provision stating, in relevant part, that:

> [Chopper] agrees to indemnify, defend and hold
> [Estes] harmless from:

---

[1] We also address a similar issue regarding indemnity provisions relating to personal injury in W. R. Hall, Inc. v. Hampton Roads Sanitation District, 273 Va. ___, ___ S.E.2d ___ (2007) (this day decided).

. . . .

    C.    Any and all loss, cost, claim, expense, cause of action, loss of use and liability by reason of injury (including death) to persons or damage to property arising out of the use, operation, ownership, maintenance or control of a [leased] Vehicle whether covered by insurance or not, including claims in excess of insurance limits and all claims determined not to be covered by insurance irrespective of who, among [Chopper] or its insurance carrier or others, may be the cause for such failure of coverage or recovery in excess of coverage.

    D.    Any liability by reason of any claim asserted by an agent or employee of [Chopper].

On December 11, 2001, James D. Davis, Jr., a Chopper employee, was injured while operating one of the trucks leased from Estes under the lease agreement. Davis filed a personal injury action against Estes and a repair company, Redman Fleet Services, alleging that their negligence caused his injuries. Estes and Davis engaged in mediation and eventually settled Davis' claim for $350,000. In settling Davis' claim, however, Estes did not admit negligence or liability.

Thereafter, pursuant to the indemnity provision in section 18(C) of the lease agreement, Estes demanded that Chopper reimburse Estes for the $350,000 settlement amount and $23,898.92 in attorneys' fees Estes incurred in reaching the mediated settlement. When Chopper refused this demand, Estes filed a motion for judgment against Chopper in the trial court

2

asserting that Estes was entitled under section 18(C) of the lease agreement to indemnity from Chopper in the amount of the settlement and the attorneys' fees.

Chopper filed a demurrer to Estes' motion for judgment. In the demurrer Chopper asserted, inter alia, that Estes was not entitled to indemnification because section 18(C) of the lease agreement was "void as against public policy."[2] In a brief supporting the demurrer, Chopper elaborated that under Johnson v. Richmond & Danville R.R. Co., 86 Va. 975, 11 S.E. 829 (1890) and Hiett v. Lake Barcroft Community Ass'n, 244 Va. 191, 418 S.E.2d 894 (1992), "indemnity agreements involving claims for personal injury are against public policy and void." Chopper asserted that section 18(C) was such an agreement and therefore unenforceable.

After a hearing, the parties filed additional briefs at the request of the trial court.[3] Subsequently, the trial court

---

[2] Chopper's demurrer also asserted that Estes was equitably estopped from bringing and/or waived its indemnity claim by failing to allege in the motion for judgment that it notified Chopper prior to settling Davis' claim. The trial court rejected this assertion and it is not at issue in this appeal.

[3] The trial court specifically requested the parties to address on brief whether Safeway, Inc. v. DPI Midatlantic, Inc., 270 Va. 285, 619 S.E.2d 76 (2005), which was decided during the course of this case, modified the law so as to affect the issues presented. Ultimately, the trial court correctly concluded that Safeway did not address the issue presented in this case. In Safeway, although we held that the Virginia Workers'

entered an order sustaining Chopper's demurrer for reasons stated in a letter opinion.  In the letter opinion, relying principally upon its interpretation of Johnson and Hiett, the trial court concluded that the indemnity provision in section 18(C) of the lease agreement is void as against public policy. Interpreting Hiett to hold that only releases and indemnification agreements pertaining to property damage are enforceable, and that both releases and indemnification agreements involving personal injuries are void, the trial court ruled that section 18(C) is void as applied to Estes' indemnity claim stemming from Davis' personal injury settlement.

The trial court permitted Estes to file an amended motion for judgment, which Estes filed again claiming that it was entitled to indemnification under section 18(C).  The amended motion for judgment was not materially different from the original motion for judgment, other than an added assertion that Estes was not negligent and that Chopper, Davis, and a third party were responsible for Davis' injuries.[4]  Chopper again filed

Compensation Act did not bar an indemnification claim pursuant to an indemnity provision nearly identical to section 18(C), the specific issue of whether the provision was void as against public policy was not before the Court.  Safeway, 270 Va. 288-90, 619 S.E.2d at 79-80.

[4] Estes also added a contribution claim to its amended motion for judgment, but that claim is not at issue in this appeal.

4

a demurrer to the amended motion for judgment. By a final order, the trial court sustained Chopper's demurrer to the amended motion for judgment for the reasons stated in its prior letter opinion. This appeal followed.

## DISCUSSION

Estes asserts as its sole assignment of error that the trial court erred in "ruling as a matter of law that indemnity agreements contained in contracts wherein a private party indemnifies itself against the possibility of its own future negligence for personal injuries are against public policy and void." Although the particular indemnity provision at issue here is drafted broadly so as to include both personal injury and property damage, under this assignment of error the question presented is whether Estes, the indemnitee, may enforce the provision and receive indemnification from Chopper, the indemnitor, when the loss was the result of a personal injury to a third party that was caused by Estes' alleged negligence.

Estes maintains that parties negotiating at arm's length are free to make contractual indemnity agreements shifting losses incurred through damage to a third party. Estes further maintains that such agreements are enforceable regardless of whether the indemnitee's negligence caused the damage to the third party and regardless of whether that damage was to person

5

or property.  With regard to Johnson and Hiett, which were relied upon by the trial court, Estes contends that those cases are applicable only to pre-injury release provisions,[5] not indemnity provisions.  According to Estes, indemnity provisions do not give rise to the important public policy concerns implicated by pre-injury release provisions.  This is so, Estes contends, because pre-injury release provisions bar an injured party from recovering from the negligent tortfeasor, while indemnity agreements merely shift losses by means of an independent contractual relationship.  Upon this basis, Estes asserts that public policy does not forbid a party from indemnifying itself against liability for personal injury caused by future negligence.

Chopper responds that the prohibition against pre-injury release provisions for personal injury announced in Johnson and Hiett applies with equal force to indemnity agreements relating to personal injury.  Chopper maintains that both types of provisions violate public policy by allowing a contracting party to put "at the mercy of its own misconduct" the other party to the contract.  Chopper points to our language in Hiett that

_____

[5] Estes alternatively refers to a pre-injury release provision as an exculpatory provision.  For all relevant purposes, these terms are interchangeable and, for consistency, we will use the term pre-injury release provisions.

6

"this Court's decisions . . . have been limited to upholding the right to contract for the release of liability for property damage, as well as indemnification from liability to third parties for such damage" to indicate that a party may only indemnify itself against losses from property damage, not personal injury.  See Hiett, 244 Va. at 195, 418 S.E.2d at 896.

We begin our review of the indemnity agreement between Estes and Chopper with the principle that "the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes." Shuttleworth, Ruloff & Giordano, P.C. v. Nutter, 254 Va. 494, 498, 493 S.E.2d 364, 366 (1997).  Furthermore, although contracts that violate public policy are void, courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.  Id.; see also Jessee v. Smith, 222 Va. 15, 17-18, 278 S.E.2d 793, 795 (1981); Ryan v. Griffin, 199 Va. 891, 895, 103 S.E.2d 240, 244 (1958).

In Johnson and Hiett, we held that the particular contractual provisions at issue were so averse to public policy as to be unenforceable.  In Johnson, the plaintiff was the personal representative of a deceased member of a firm of quarrymen hired by the defendant railroad company to remove a

7

granite bluff from its right of way.  86 Va. at 975-76, 11 S.E. at 829.  The decedent was killed when struck by a wheelbarrow that had been hit by an oncoming train.  Id.  At trial, the jury was instructed as to a pre-injury release provision in the agreement between the firm and the railroad company whereby the railroad company would "in no way be held responsible for any injuries to or death of any of the members of the said firm, or of any of its agents and employees, sustained from said work, should such death or injury occur from any cause whatsoever."[6] Id. at 976, 11 S.E. at 829.  The release agreement had been executed by the decedent so as to act as an individual release by him in favor of the railroad company.  The jury rendered a verdict in favor of the railroad company, and the trial court entered a judgment affirming that verdict.

We reversed, holding the release provision to be void to the extent that it "stipulates for exemption from liability even for the consequences of the [railroad] company's own negligence . . . [and] precludes a recovery by the plaintiff, whether the company was negligent or not."  Id. at 978, 11 S.E. at 830.  We

---

[6] The agreement also contained an indemnity provision whereby "in the event of any suit being brought against the [railroad company] or any judgment being obtained against the same, then the [firm] shall resist said suit, and pay such judgment, together with all costs incident thereto."  However,

8

stated that to "uphold the stipulation in question, would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct; which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void." Id.

Over one hundred years later, in Hiett, we reiterated the principle stated in Johnson. In Hiett, the plaintiff was seriously injured while participating in a triathlon sponsored by the defendant. 244 Va. at 192, 418 S.E.2d at 894-95. Prior to the event, the plaintiff had signed an entry form in which he agreed to "waive, release and forever discharge any and all rights and claims for damages which I have or may hereafter accrue to me against the organizers and sponsors . . . for any and all injuries suffered by me in said event." Id. at 192-93, 418 S.E.2d at 895. We held the provision to be unenforceable based on the principle that pre-injury release provisions pertaining to future negligence are void as against public policy. Id. at 194-95, 418 S.E.2d at 896. In doing so, we noted that the cases decided since Johnson were "limited to upholding the right to contract for the release of liability for

the indemnity provision was inapplicable under the circumstances of the case.

9

property damage, as well as indemnification from liability to third parties for such damage." Id. at 195, 418 S.E.2d at 896 (discussing C & O Ry. Co. v. Clifton Forge-Waynesboro Telephone Co., 216 Va. 858, 224 S.E.2d 317 (1976); Nido v. Ocean Owners' Council, 237 Va. 664, 378 S.E.2d 837 (1989), Richardson-Wayland Elec. Corp. v. VEPCO, 219 Va. 198, 247 S.E.2d 465 (1978), Appalachian Power Co. v. Sanders, 232 Va. 189, 349 S.E.2d 101 (1986), and Kitchin v. Gary Steel Corp., 196 Va. 259, 83 S.E.2d 348 (1954)).

While Johnson and Hiett clearly prohibit pre-injury release provisions relating to personal injury, we agree with Estes that such provisions are substantively different from indemnity provisions with regard to their purpose, effect, and public policy implications. The purpose of pre-injury release provisions such as those in Johnson and Hiett is to prospectively extinguish one party's right to recover for future bodily injuries caused to that one party by the other party's negligence. The effects of such provisions are twofold: a party suffering personal injury is barred from seeking a recovery from the tortfeasor, likely depriving the injured party of all possibility of recovery, and the released party's motivation to exercise ordinary care to prevent harm to the releasing party may be diminished because the possibility of

10

legal liability is removed.  In both Johnson and Hiett, these concerns were realized because, had the release provisions been enforced, the plaintiff would have been left with no possible recovery for the defendant's alleged negligence and those same defendants would have been, essentially, judgment-proof despite their negligence.  As we stated long ago in Johnson, such provisions cannot be tolerated under an enlightened system of jurisprudence.

In contrast, the purpose of an indemnity provision is to pre-determine how potential losses incurred during the course of a contractual relationship will be distributed between the potentially liable parties.  See Safeway, 270 Va. at 289, 619 S.E.2d at 79.  Moreover, indemnity provisions, including those indemnifying a party against future liability for personal injury caused by its own negligence, do not invoke the same public policy concerns as pre-injury release agreements.[7]  The primary reason for this distinction is that, unlike pre-injury release provisions, indemnity provisions do not bar or even

---

[7] Such provisions are likely prevalent in the business community given that several of our cases have involved such provisions.  See, e.g. Seaboard Air Line Railroad Co. v. Richmond-Petersburg Turnpike Auth., 202 Va. 1029, 1030, 121 S.E.2d 499, 501 (1961) (provision indemnifying against "any liability, damage, loss or injury"); Appalachian Power Co., 232 Va. at 195-96, 349 S.E.2d at 105 (provision indemnifying against "any and all claims of whatever nature").

11

diminish an injured party's ability to recover from a tortfeasor. Indeed, regardless of whether the indemnitee recovers from the indemnitor, the negligent indemnitee remains liable to the injured party. That being the case, it is evident that enforcement of an indemnity provision does not jeopardize in any way the injured party's ability to recover.

We recognize that to allow a party to indemnify itself against its own negligence in causing personal injury to another potentially puts the indemnitor at the mercy of the indemnitee's own misconduct. Theoretically, it can be argued that an indemnitee may have a diminished concern with being negligent because of its contractual right ultimately to be reimbursed by the indemnitor, which may lead to less motivation to act with care toward preventing personal injury. However, the mere existence of an indemnity provision does not guarantee reimbursement by the indemnitor because, for example, it may have become insolvent. With no guarantee of indemnity, we think it highly unlikely that a party would neglect to exercise ordinary care simply in anticipation that it ultimately might not have to bear the burden of any liability incurred as a

result of its failure to exercise ordinary care to avoid personal injury to another.[8]

Chopper does not put forth, and we cannot envision, any other reason why public policy would forbid a party from indemnifying itself against its own negligence through a contractual provision negotiated at arm's length with a willing indemnitor.  The indemnity provision at issue here, set forth in section 18(C) of the lease agreement between Estes and Chopper, is thus enforceable even to the extent that it would entitle Estes to be reimbursed from Chopper in the amount of its loss as a result of Davis' personal injuries caused by Estes' alleged negligence.

CONCLUSION

For these reasons, we hold the trial court erred in ruling that the indemnity provision in section 18(C) is unenforceable, and in sustaining Chopper's demurrer for that reason. Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings.

<u>Reversed and remanded</u>.

---

[8] We also note that, at least since <u>C & O Railway Co.</u>, we have upheld even pre-injury release provisions relating to property damage, 216 Va. at 865-66, 224 S.E.2d at 322, and no

13

evidence has arisen that this has in any way engendered public harm.