**AUTONATION DIRECT.COM, INC. d/b/a Auto Advertising Services, Appellant,**

v.

**THOMAS A. MOOREHEAD, INC. d/b/a BMW of Sterling, Appellee.**

No. 14–07–00539–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 20, 2009.

William T. Green, III, Houston, for appellant.

Laura Beckman Hedge, Houston, for appellee.

Panel consists of Justices ANDERSON and FROST and Senior Justice HUDSON.*

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from the granting of a summary judgment in favor of the defendant in litigation arising out of a contract

* Senior Justice J. Harvey Hudson sitting by assignment.

dispute. Because appellee, Thomas A. Moorehead, Inc. d/b/a/ BMW of Sterling, failed to meet its summary judgment burden, we reverse and remand to the trial court for further proceedings in accordance with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2003 appellant, Autonation Direct.com, Inc. d/b/a Auto Advertising Services, and appellee executed an Advertising Agreement. Among other things, appellant agreed to provide appellee "with referrals from the New Car Advertising Service." In addition, the parties agreed that because appellant "is not a broker or an agent, but merely an advertising service, fees due to [appellant] are in no way dependent or contingent on a sale to the consumer." In exchange for these new car referrals, appellee agreed to pay appellant an amount determined by the number of new car referrals provided. Appellee also agreed to pay appellant an $850.00 flat monthly fee in exchange for used car referrals. Finally, the parties agreed Virginia law would govern the interpretation of the Advertising Agreement.

Following the execution of the Advertising Agreement, appellant invoiced appellee the $850 flat monthly fee, which appellee paid. However, when appellant notified appellee that appellee owed appellant more than $23,000 for new car referrals, appellee refused to pay. Appellant then filed suit seeking to collect the outstanding amount. Arguing it was entitled to judgment as a matter of law because the Advertising Agreement was illegal under Virginia law and was therefore unenforceable, appellee moved for summary judgment on appellant's cause of action. In addition, appellee sought the award of attorney's fees as the prevailing party under the Advertising Agreement. The trial court agreed the Advertising Agreement was il-

legal under Virginia law and granted appellee's motion as to appellant's cause of action. However, because it had found the Advertising Agreement was illegal and unenforceable under Virginia law, the trial court denied appellee's motion for summary judgment to the extent it sought the award of costs and attorney's fees and entered a final judgment. Both parties have appealed from that final judgment.

## DISCUSSION

In a single issue on appeal, appellant challenges the trial court's granting of appellee's motion for summary judgment as to appellant's cause of action seeking payment of $23,360.00 for the provision of new car referrals. In addition, in three cross-issues, appellee challenges the trial court's denial of appellee's request for attorney's fees and costs.

### A. Choice of Law and the Standard of Review

■ The parties contractually agreed to apply the law of Virginia to their contract. Texas courts will respect that choice and apply the law the parties chose. *Illinois Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 532 (Tex.App.-Houston [14th Dist.] 2006, no pet.). However, while the substantive law of Virginia may apply, we as the forum will apply our own law to matters of remedy and procedure. *Id.* Procedure includes standards of review. *Id.* Therefore, we use Texas law to determine what deference to give the trial court's ruling, and Virginia law to construe the contract and statutes at issue.

■ Appellee moved for a traditional summary judgment pursuant to rule 166a(c) of the Texas Rules of Civil Procedure. The movant for a traditional summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter

of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the non-movant's favor. *Id.* at 548–49. We review a trial court's summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). A defendant is entitled to summary judgment if it conclusively negates at least one of the essential elements of a plaintiff's cause of action or conclusively establishes all necessary elements of an affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). Only when the defendant establishes its right to summary judgment, does the burden shift to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

**B. Is the Advertising Agreement Illegal and Unenforceable Under Virginia Law?**

 Appellee contends the Advertising Agreement is illegal under Virginia law and is therefore unenforceable. Accordingly, we look to Virginia law on statutory construction. Statutory construction is a question of law which is reviewed *de novo* on appeal. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). When construing statutes, courts apply the plain language of the statute unless the terms are ambiguous. *Lynchburg Div. of Social Services v. Cook,* 276 Va. 465, 666 S.E.2d 361, 368 (2008). If the language is plain, certain, and unambiguous, so that no doubt arises from its own terms as to its meaning, then there is no room for interpretation. *Id.* The rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of the statute useless, repetitious, or absurd. *Id.* at 370. On the contrary, it is well established that every act of the legislature should be read as to give reasonable effect to every word. *Id.*

 Under Virginia law, in general, a contract based on an act forbidden by a statute is void and no action will lie to enforce the contract. *Blick v. Marks, Stokes & Harrison,* 234 Va. 60, 360 S.E.2d 345, 348 (1987). However, the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes. *Estes Express Lines, Inc. v. Chopper Express, Inc.,* 273 Va. 358, 641 S.E.2d 476, 478 (2007). Furthermore, although contracts that violate public policy are void, courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. *Id.*

 In support of its contention that the Advertising Agreement is illegal, appellee cites only section 46.2–1537 of the Code of Virginia.[1] Section 46.2–1537 provides:

> Prohibited solicitation and compensation
> It shall be unlawful for any motor vehicle dealer or salesperson licensed under this chapter, directly or indirectly, to solicit the sale of a motor vehicle through a pecuniarily interested person, or to pay, or cause to be paid, any commission or compensation in any form whatsoever to any person in connection with the sale of a motor vehicle, unless the person is duly licensed as a salesperson employed by the dealer. It shall

---

1. Appellee cites no additional statutes in support of its contention the type of advertising contract at issue in this appeal is illegal. In addition, appellee cites no Virginia regulations or caselaw holding this type of advertising contract is illegal.

also be unlawful for any motor vehicle dealer to compensate, in any form whatsoever, any person acting in the capacity of a salesperson as defined in § 46.2–1500 unless the person is licensed as required by this chapter.

VA.CODE ANN. § 46.2–1537 (West 2008).

Appellee argues this statute prohibits the type of advertising called for by the Advertising Agreement because, in appellee's view, the disputed payment is connected with the sale of a motor vehicle. Appellee cites no Virginia caselaw construing this section of the Virginia Code. Instead, appellee relies exclusively on a small section of a document entitled "Internet Task Force Report" ("ITF Report"). The section of the ITF Report appellee relies on provides:

> D. Unlicensed Third–Party Vendors, Including Brokers and Dotcoms
>
> The ITF supports the idea that an unlicensed third-party vendor may establish a website that includes the inventory of different dealers, so long as consumers must visit the dealer where a vehicle is located to purchase the vehicle. This situation includes, but is not limited to, "referrals" sent to dealers from the unlicensed third-party. However, the ITF limits support of this model to situations where payment for this service from the motor vehicle dealer to the unlicensed third-party vendor is not "transactional." That is the ITF supports the idea that licensed motor vehicle dealers may only compensate an unlicensed third-party vendor by a flat payment structure (e.g. per month) rather than per sale, per referral or any other transactional basis.

Internet Task Force Report, p. 6.

We disagree the ITF Report supports appellee's construction of the Virginia statute. Initially, appellee brought forward no summary judgment evidence demonstrating that the ITF Report has any legal significance, much less the same legal effect as a Virginia statute, a Virginia regulation, or the common law of Virginia. Instead, appellee argues that because the title page of the report provides that it was adopted on January 9, 2001, it somehow assumes the force of law. Instead of making the ITF Report the law of Virginia, we believe the statement "Adopted January 9, 2001" means only that the Internet Task Force, which was created by the Virginia Motor Vehicle Dealer Board[2] ("MVDB") to review emerging internet and associated e-commerce vehicle sales industry issues, adopted the report and submitted it to the MVDB for its future consideration. This conclusion is reinforced by the statement found on page 2 of the ITF Report that "[t]he objective of this review was to submit recommendations to the Motor Vehicle Dealer Board for their consideration and guidance for future policy determinations." Accordingly, we hold the ITF Report constitutes nothing more than a research report submitted to the MVDB and does not constitute the law of the Commonwealth of Virginia.

■ We turn now to the Virginia statute itself. According to appellee, section 46.2–1537 prohibits the type of advertising contract at issue here because it is connected with the sale of a motor vehicle and appellant is not a licensed salesperson employed by a licensed motor vehicle dealer. Appellee makes this argument even though the Advertising Agreement itself provides "fees due to [appellant] are in no way dependent or contingent on a sale to the consumer." Construing the statute as

---

**2.** The Motor Vehicle Dealer Board is the regulatory body in Virginia charged with the oversight of the motor vehicle dealer industry in Virginia. VA.CODE ANN. § 46.2–1503.4.

suggested by appellant would prohibit all motor vehicle advertising in Virginia. Common sense dictates the Virginia legislature could not have intended such an absurd result. Accordingly, we reject appellee's suggested construction. Instead, we hold the statute, rather than regulating advertising, does what it plainly says: it prohibits a Virginia motor vehicle dealer from compensating any person not licensed as a salesperson by the MVDB when that person participates in the sale of a motor vehicle. This construction is reinforced by the fact there is a separate Virginia statute, titled "Advertisements," regulating advertising. *See* VA.CODE ANN. § 46.2–1535 (Providing, in its entirety, "Unless the dealer is clearly identified by name, whenever any licensee places an advertisement in any newspaper or publication, the abbreviations 'VA DLR,' denoting a Virginia licensed dealer, shall appear therein."). The fee structure under the contract does not fall within the scope of the statute.

Because appellee did not meet its summary judgment burden and establish, as a matter of law, that the Advertising Agreement is illegal under Virginia law, we sustain appellant's issue on appeal and reverse the trial court's granting of appellee's motion for summary judgment. In addition, because we have reversed the granting of appellee's motion for summary judgment and appellee is no longer the prevailing party, we need not address appellee's three cross-issues on appeal. Tex.R.App. P. 47.1.

#### CONCLUSION

Because we have sustained appellant's single issue on appeal, we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

FROST, J., concurs.

KEM THOMPSON FROST, Justice, concurring.

Under the parties' agreement, the substantive law of Virginia governs their contract; however, Texas procedural law applies. Under Texas summary-judgment procedure, the trial court's ruling is entitled to no deference; rather, this court conducts a de novo review and determines the issue as a matter of law.

Our task in this case is to determine if the parties' agreement violates a Virginia statute, section 46.2–1537 of the Virginia Code, prohibiting certain solicitation and compensation in connection with the sale of motor vehicles. The trial court held the Advertising Agreement illegal under this statute and refused to enforce it. No Virginia court has addressed the issue, and it appears to be a question of first impression.

The Advertising Agreement between appellant AutoNation Direct.Com, Inc. ("AutoNation") and appellee BMW of Sterling (the "BMW Dealership") essentially calls for AutoNation to provide advertising services to the BMW Dealership in consideration for fees. The contract provides for two forms of compensation: an $850 flat monthly fee for used-car referrals and a sliding scale referral fee (according to the number of sales leads provided) for new car referrals. Neither of the provisions give the BMW Dealership a financial interest in the sale of any motor vehicle. For this reason, neither provision violates section 46.2–1537.

Pointing to the plain language of section 46.2–1537, the BMW Dealership argues the Virginia statute prohibits the type of compensation structure prescribed by the Advertising Agreement. The majority concludes that "[c]onstruing the statute as suggested by appellant would prohibit all

motor vehicle advertising in Virginia."[1] Nothing in the statute suggests the Virginia legislature intended to prohibit motor vehicle dealerships from advertising their products or from compensating advertisers for services rendered. What the Virginia legislature sought to prohibit was the compensation by dealers and licensed salespersons of any non-licensed "pecuniarily interested person" in sales transactions.

AutoNation is not a "pecuniarily interested person" within the meaning of the statute because AutoNation's compensation is not dependent on the sale of any motor vehicle. Under the parties' contract, AutoNation earns its fee for the referral of leads. AutoNation provides the names of potential buyers, and this service is complete at the point of referral. AutoNation is entitled to payment whether or not those leads ripen into sales. Likewise, if a solicitation for the sale of a motor vehicle comes to fruition as a result of an AutoNation referral, AutoNation is entitled to no payment, commission, or other compensation as a result of that sale. As such, AutoNation has no pecuniary interest in any sales transaction that might flow from its referrals. Because AutoNation's compensation is not dependent upon or otherwise tied to any sale of a motor vehicle, the BMW Dealership's payment for referrals is not "in connection with the sale of a motor vehicle" within the meaning of the statute.

Section 46.2–1537's language is unambiguous and broad. The Virginia legislature intended to cast a wide net by enacting a sweeping prohibition against dealers and salespersons' solicitation "directly or indirectly" of motor vehicle sales through pecuniarily interested persons, forbidding payment "in any form whatsoever ... in connection with the sale" to any unlicensed

persons not employed by the dealer. *See* Va.Code Ann. § 46.2–1537 (West 2008). The structure and language of the parties' contract strongly suggests the parties were aware of the prohibition in section 46.2–1537 and that they crafted their agreement to avoid a statutory violation by ensuring that AutoNation's compensation was not tied, directly or indirectly, to the outcome of any transaction so that AutoNation would not be a "pecuniarily interested person" under the statute.

The majority holds that the statute prohibits compensation to an unlicensed person "when that person participates in the sale of a motor vehicle."[2] The legality of the transaction does not turn on participation in the sale. The key inquiry is not participation but the payee's status as a "pecuniarily interested person." For this reason, the focus should be on whether the recipient of the payment had a financial interest in the outcome of the sale transaction. In this case, AutoNation would not gain one iota from the BMW Dealership's sale of any motor vehicle. Though clearly a participant in the advertising of motor vehicles offered for sale by the BMW Dealership, AutoNation had no financial stake in the outcome of any sale.

While no violation exists under the fact pattern presented in this appeal, it is not because it would be absurd to construe the statute as barring referrals; rather, it is because the BMW Dealership is not engaging in the prohibited activity of compensating a pecuniarily interested person who is not licensed. Under the fact pattern in this case, because AutoNation's compensation is not dependent on the success or failure of its referrals or the ultimate sale of any vehicle, the BMW Dealership's obligation to pay for advertising

---

**1.** *See ante* at 474.

**2.** *See ante* at 474.

services under the parties' agreement does not fall within the scope of the statutory prohibition. With no outcome-based component to the agreement, AutoNation cannot possibly have a pecuniary interest in any sales transaction that comes from its referrals. For this reason, the BMW Dealership did not establish, as a matter of law, that its contract with AutoNation violates the Virginia statute. Therefore, summary judgment was improper.