## CIRCUIT COURT OF FAIRFAX COUNTY

Farmers Insurance Exchange

    v.

Enterprise Leasing Co.

October 14, 2009

Case No. CL 2008-5577

BY JUDGE LESLIE M. ALDEN

This matter came before the Court on the Motion for Declaratory Judgment filed by Farmers Insurance Exchange ("Farmers") and on the Motion for Summary Judgment filed by Enterprise Leasing Company ("Enterprise"). After considering the written briefs, oral arguments, case law, and Virginia's statutory insurance scheme, the Court finds that the holding in *U.S.A.A. v. Hertz*, 265 Va. 450, 578 S.E.2d 775 (2003), together with Va. Code Ann. §§ 46.2-108, 46.2-368, and 46.2-705 evince a clear legislative intent requiring a company that rents motor vehicles without drivers to ensure that such vehicles have the statutory minimum liability insurance coverage. However, the Court further finds that this requirement does not preclude Enterprise from seeking indemnification from its renter for damages Enterprise paid to a third party resulting from the renter's negligence.

### Factual Background

The parties stipulated to the following facts for the purposes of this action. Enterprise is a business engaged in the renting of motor vehicles without drivers within the meaning of Va. Code Ann. § 46.2-108. Enterprise

holds a certificate of self-insurance pursuant to Va. Code Ann. § 46.2-368. Farmers is a mutual insurance company licensed to issue motor vehicle liability insurance policies in Virginia.

Farmers issued a motor vehicle liability insurance policy to Mr. Bataa Baasanjav for the April 16, 2007, through September 28, 2007, policy period. Baasanjav's car, which was insured under the Farmers policy, needed repairs. Baasanjav leased a vehicle from Enterprise ("Lease Agreement") to use as a temporary substitute while his car was being repaired. The Farmers policy contained a provision which made Farmers only liable for excess insurance over any other collectible insurance when Baasanjav was operating a temporary substitute vehicle. At the time Baasanjav entered into the Lease Agreement with Enterprise, Baasanjav was given the option of purchasing optional supplemental liability protection ("SLP") at a cost of $11.99 per day over the rental price. Baasanjav declined to purchase the SLP, which he indicated by initialing a box on the Lease Agreement which reads "Renter declines optional supplemental liability protection."

Paragraph 8 of the Lease Agreement contained an indemnification provision providing that the renter, Baasanjav, would indemnify Enterprise for all expenses Enterprise incurred as a result of the rental transaction. The Indemnification Provision states that the renter may present a claim to the renter's insurance for all such losses. The Indemnification Provision further provides that this obligation to indemnify may be limited if the renter purchases the SLP. The cost of the rental car was billed directly to Farmers.

On April 17, 2007, Baasanjav, while driving the car he leased from Enterprise, collided with a parked car owned by Joseph Brand causing $5,000.34 in property damage and the cost of a rental car for Brand. Enterprise paid Brand this amount in accordance with Enterprise's obligation to provide primary bodily injury and property damage liability coverage and then sought indemnification from Baasanjav pursuant to the Lease Agreement. Farmers then filed this declaratory judgment action seeking a declaration of the rights and liabilities of the parties.

## Legal Analysis

In *Hertz*, the Virginia Supreme Court unambiguously stated that a rental car company, such as Enterprise, is required to lease cars that carry primary liability insurance coverage. *Hertz*, however, did not answer the question presented in this case, which is whether a rental car company, such as Enterprise, which leases cars under a certificate of self-insurance, may seek indemnification from its renters for losses incurred when the renter's

negligence causes damage to a third party. Stated another way, the question is whether self-insurance is comparable to insurance such that a self-insurer may not recover from its renter for loss caused by the renter's negligence. To answer this question, the Court must first examine whether the indemnity provision in the Lease Agreement is enforceable under Virginia law. Then the Court must decide whether enforcement of this indemnity provision violates the holding in *Hertz*. Finally, if the indemnity provision is both enforceable and does not violate *Hertz*, the Court must determine the respective liabilities of Enterprise and Farmers.

## A. *The Indemnity Provision in Enterprise's Lease Agreement Is Enforceable*

An indemnity provision is nothing more than an agreement between two parties as to how to allocate, between themselves, the risk of a potential loss. *See First Va. Bank — Colonial v. Baker*, 225 Va. 72, 77, 301 S.E.2d 8 (1983). The "purpose of an indemnity provision is to pre-determine how potential losses incurred during the course of a contractual relationship will be distributed between the potentially liable parties." *Estes Express Lines, Inc. v. Chopper Express, Inc.*, 273 Va. 358, 641 S.E.2d 476 (2007) (citation removed). The Virginia Supreme Court recently upheld the use of an indemnity provision in a lease agreement to allocate the risk of loss from the rental of motor vehicles. *Estes*, 273 Va. at 367.

In *Estes*, the plaintiff leased several trucks to Chopper Express. The lease agreement contained an indemnity provision providing that Chopper agreed to indemnify Estes from "[a]ny and all loss . . . and liability by reason of injury . . . to persons or damage to property arising out of the use . . . of a [leased vehicle]." *Estes*, 273 Va. at 361. Estes was then sued by a person who was injured while operating one of the leased vehicles. After settling the personal injury claim, Estes sought indemnity from Chopper pursuant to the lease agreement. The question presented in *Estes* was "whether Estes, the indemnitee, may enforce the provision and receive indemnification from Chopper, the indemnitor, when the loss was the result of a personal injury to a third party that was caused by Estes' alleged negligence." *Id.* at 363.

The Virginia Supreme Court found that the indemnity provision in the lease did not "jeopardize in any way the injured party's ability to recover" and upheld the indemnity provision as not contrary to public policy. *Id.* at 366. As part of its reasoning, the Virginia Supreme Court distinguished pre-injury release provisions relating to personal injury from indemnity provisions. These pre-injury release provisions relating to personal injury are prohibited by *Johnson v. Richmond & Danville RR.*, 86 Va. 975, 11 S.E. 829 (1890); and

*Hiett v. Lake Barcroft Cmty. Ass'n*, 244 Va. 191, 418 S.E.2d 894 (1992). The former seek to "prospectively extinguish one party's right to recover for future bodily injuries caused to that one party by the other party's negligence" and bar the injured party from seeking recovery from the tortfeasor. *Id.* at 365. The Court then contrasted indemnity provisions which do not alter the injured third party's ability to recover from a tortfeasor but instead are a contractual way to pre-determine the manner in which potential losses will be distributed among the parties to the contract. *Id.* Although *Estes* did not involve issues related to insurance, the Court made clear that indemnity provisions are valid in Virginia to allocate the risk of loss between parties *ex ante*. Despite the holding in *Estes*, Farmers contends that Enterprise still cannot seek indemnification from Baasanjav because Virginia's statutory scheme requires Enterprise to provide insurance to its renters, and, therefore, it cannot seek indemnification from them.

Farmers relies on *Sherwood Trucking, Inc. v. Carolina Casualty Ins. Co.*, 552 F.2d 568 (1977), for the proposition that an insurer cannot seek indemnification from its insured. In *Sherwood Trucking*, Sherwood entered into trip-lease agreement with Lawson under which Sherwood leased Lawson's truck and hired Lawson to drive the truck to haul freight from Indiana to Virginia. *Sherwood*, 552 F.2d at 570. While en route to Virginia, Lawson and one of his employees were involved in an accident. *Id.* After Sherwood's insurance company settled the suits arising from the accident, Sherwood sought indemnification from Lawson's insurance company, Carolina Casualty. *Id.* The Virginia Supreme Court held that Sherwood could not seek indemnification from Lawson or his insurance company because Sherwood's insurance policy named Lawson as an insured and because an insurance company cannot seek indemnification from someone it insures. *Id.* at 572. Farmer's reliance on *Sherwood* is misplaced because there is an important difference between the facts in *Sherwood* and the case at bar, namely *Sherwood* dealt with insurance policies and insurance companies not self-insurers.

The distinction between a vehicle lease agreement issued under a certificate of self-insurance and an insurance policy issued by an insurance company is critical to the Court's analysis. Self-insurance is not treated as the equivalent of insurance under Virginia law. *Compare* Va. Code Ann. § 46.2-368 (requiring self-insurers to apply for a certificate through and to the satisfaction of the Commissioner of the Department of Motor Vehicles) *with* Va. Code Ann. § 38.2-200 (charging the State Corporation Commission with the supervision and regulation of insurance and insurers). Indeed, the Virginia Supreme Court discussed the distinction between self-insurers and insurance

in *Yellow Cab Co. of Va. v. Adinolfi*, when it held that cab companies, as self-insurers, were not required to provide uninsured motorist coverage under the then-existing uninsured motorist statute, Va. Code Ann. § 38.1-381 (1955). *Yellow Cab Co. of Va. v. Adinolfi*, 204 Va. 815, 822, 134 S.E.2d 308 (1964). In *Yellow Cab*, the Virginia Supreme Court examined the uninsured motorist statute then in effect and observed that it dealt only with "policies, contracts, and insurance companies." *Id.* at 818. The Court held that this language did not encompass self-insurers because self-insurers did not issue policies. *Id.* Although *Yellow Cab*'s holding has been subsequently abrogated in part by the amendment of Va. Code Ann. § 46.2-368(B), the reasoning of the decision holding that self-insurers are not tantamount to insurance companies remains binding Virginia precedent. Had the General Assembly intended to treat self-insurers as insurers for all purposes, it could have done so explicitly.

In the same way that the Virginia Supreme Court examined the uninsured motorist statute in *Yellow Cab*, in this case, this Court is asked to examine the self-insurance statute. Va. Code Ann. § 46.2-368, the statute that provides for self-insurers, is entitled "Certificate of Self-Insurance Exempts from Chapter." Subsection (A) states:

> [t]his chapter, except §§ 46.2-371 through 46.2-373, *shall not apply* to any person who has registered in his name in the Commonwealth more than twenty motor vehicles, nor to any person operating more than twenty vehicles whether as owner or as lessee, if the person seeking exemption under this section obtains from the Commissioner a certificate of self-insurance as provided in subsection B of this section.

Va. Code Ann. § 46.2-368(A) (emphasis supplied).

In other words, the rest of the chapter, including the requirements of Va. Code Ann. §§ 46.2-472 and 46.2-473, which contain the provisions for owner's liability insurance policies and driver's liability insurance policies respectively, does not apply to self-insurance. Further, the statute also provides that any uninsured motorist protection is secondary to any valid and collectible insurance. It is apparent from Va. Code Ann. § 46.2-368 and the exception carved out for uninsured motorist coverage that the Virginia General Assembly intends to distinguish the obligation of insurers and those persons carrying a certificate of self-insurance.

Self-insurance has been defined as "the assumption of one's own risk and, typically, involves the setting aside of a special fund to meet losses and pay valid claims, instead of insuring against such losses and claims through an

insurance policy." 10A M.J., *Insurance*, § 59.1. Self-insurance has also been described as the antithesis of insurance "because if insurance requires an undertaking by one to indemnify another, it cannot be satisfied by a self-contradictory undertaking by one to indemnify oneself." 43 Am. Jur. 2d., *Insurance*, § 20. In a self-insurance scheme "there is no shifting of the risk from the individual person or company to a larger group. Thus, even though self-insurance for certain types of risks may be regulated by the state insurance department, it does not constitute insurance in any real sense." 1-1 *Appleman on Insurance*, § 1-3.

Common sense dictates that the relationships created by self-insurance and insurance are vastly different. In an insurer-insured relationship, the insurance company undertakes a comprehensive risk assessment of a potential insured before determining an appropriate premium to charge. Contrast this relationship with that of a self-insurer, such as Enterprise, which charges a standard rate for automobile rental and offers a separate insurance service that may take into account a separate risk assessment.

In addition, in this case, Baasanjav had no reasonable expectation that Enterprise was providing him with insurance. Enterprise offered to supply Baasanjav with SLP which he explicitly rejected. Further, Paragraph 7 of the Lease Agreement between Enterprise and Baasanjav, which states in relevant part:

> Owner complies with applicable motor vehicle financial responsibility laws as a state certified self-insurer, bondholder, or cash depositor. Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, Owner does not extend any of its motor vehicle financial responsibility or provide insurance coverage to Renter. . . .

makes it clear to its renter that Enterprise does not provide insurance. The relationship in this case between Baasanjav and Enterprise is one of lessor/lessee and not of insurer/insured.

Because this Court concludes that Enterprise does not provide insurance to its renters in the same way that an insurance company provides insurance to its insureds, *Sherwood Trucking*'s prohibition on indemnification does not apply to the case at bar. The Court additionally finds that the specific indemnity provision in this case is enforceable under *Estes*. The Court does not reach the issue of whether Va. Code Ann. § 38.2-2205(A)(1), commonly known as the Garage Keeper's Exception to the Omnibus Statute, makes

Enterprise's liability secondary to the insurance provided by Farmers because the Court does not find that Enterprise is obligated to provide "insurance" to Baasanjav. However, before determining the liabilities of the parties, the Court must ensure that enforcement of the indemnity provision in the Lease Agreement does not contravene the Virginia Supreme Court's holding in *Hertz*.

B. *Enforcement of the Indemnity Provision Does Not Contravene the Holding in Hertz*

In *U.S.A.A. v. Hertz*, the Virginia Supreme Court held that, "[w]hen read *in pari materia*, Code §§ 46.2-108, 46.2-368, and 46.2-705, evince a clear legislative intent that a company renting a motor vehicle without a driver in Virginia must assure that the vehicle has the statutory minimum liability insurance coverage." *U.S.A.A. v. Hertz*, 265 Va. 450, 457, 578 S.E.2d 775 (2003). The Court stated that Hertz, a self-insurer like Enterprise, may not "lawfully rent one of its vehicles unless that vehicle is insured with the statutorily mandated amount of *primary* bodily injury and property damage liability coverage." *Id.* at 458 (emphasis in original). The Court further held that Hertz, in addition to providing primary liability coverage, must also provide a defense for its renter for any bodily injury claim arising out of the operation of Hertz's rental car that may be asserted by an injured third party. *Id.* at 459.

*Hertz* requires that rental cars carry *primary* bodily injury and property damage liability insurance coverage, which Enterprise has done here by paying the third party for damages caused by the negligence of a driver of a rented vehicle. Although the Court rejected the argument that a self-insurer could avoid its obligation by purporting to alter or expand the coverage provided by the customer's own policy, the *Hertz* Court did not decide whether the rental car company could seek indemnification from its renter or otherwise contract with the renter to allocate loss due to the renter's negligence. *Id.* Indeed, the Court expressly reserved the question whether the renter or "Hertz may be able to assert either factual or legal defenses that would bar any reimbursement to USAA." *Hertz*, 265 Va. at 459.

The decision in *Hertz* was based in part on the fact that the Hertz lease agreement, by its own terms, attempted to expand the coverage that USAA had contractually agreed to provide the renter by stating specifically that Hertz's liability would be secondary to the renter's liability insurance. *Id.* at 453. However, the USAA policy limited its coverage of a non-owned vehicle to "excess over any other collectible insurance." *Id.* The Court stated that,

"because USAA was not a party to Hertz's contract with Hess, Hertz could not expand USAA's obligations to Hess under that separate contract by attempting to require USAA to provide primary liability coverage for Hess's use of Hertz's rental vehicle." *Id.* In this case, Enterprise is not using its Lease Agreement with Baasanjav to cause Farmers to provide primary liability coverage. Enterprise has already provided primary liability coverage by promptly paying Brand's claim. Enterprise now seeks to hold Farmers as co-primarily liable by virtue of the terms of Farmers' own policy, not by virtue of language employed in the Enterprise Lease Agreement.

Furthermore, in *Hertz*, the Virginia Supreme Court sought to promote legislative intent to assure that motor vehicles have the statutory minimum insurance coverage. However, Farmers tries to expand the holding in *Hertz* to blur the statutory distinction between self-insurance and insurance by arguing that *Hertz* makes Enterprise, and other self-insurers, an insurer of all renters for all purposes. While Hertz requires motor vehicle rental companies to provide primary liability coverage, the Court did not decide that motor vehicle rental companies were insurers of those to whom they rented vehicles. Indeed, such a reading of *Hertz* would contravene the General Assembly's prerogative to treat insurance and self-insurance differently as discussed earlier in this opinion and as evidenced by the different statutory schemes governing self-insurers and insurance companies. Rather, the decision in *Hertz* discussed the legislative intent to protect the ability of drivers in Virginia to recover from negligent drivers.

In fact, both the *Hertz* and *Estes* Courts examined the effects of the holdings on public policy. The *Hertz* Court held that requiring motor vehicles rented without drivers to carry the statutory minimum liability insurance coverage was "in keeping with the long-standing public policy to assure that motor vehicles driven on the highways of Virginia are subject to a minimum level of primary liability insurance in order to provide for the *protection and compensation of innocent parties injured in motor vehicle accidents." Hertz*, 265 Va. at 457 (emphasis supplied). The *Estes* Court found that the indemnity provision in the lease did not "jeopardize in any way the injured party's ability to recover." *Estes*, 273 Va. at 366. As both Courts placed an emphasis on preserving an injured party's ability to recover from a tortfeasor, it seems that a self-insurer is treated like an insurer in relation to third parties but is not considered to be an insurer in relation to a renter. Requiring Enterprise to first make the injured third party whole and then permitting Enterprise to seek indemnification from its renter satisfies both the requirements of *Hertz* and conforms to the public policy of Virginia that protects an innocent party's right to recover from a tortfeasor.

## C. *Farmers Is Liable for the Amount Enterprise Paid to the Injured Third Party*

The Farmers insurance policy issued to Baasanjav provides that Farmers will:

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of. . . .
> B. injury to or destruction of property . . . arising out of the ownership, maintenance, or use of the owned automobile or any non-owned automobile. . . .

Farmers Insurance Policy, page 3 of Policy Form 56-2450, 2nd edition, 7-95. The individual named as the "insured" in the Farmers policy is Bataa Baasanjav. The Nissan automobile which Baasanjav rented from Enterprise qualifies as the "owned automobile" because that term is defined by the Farmers' policy to include a "temporary substitute vehicle," *id.* at p. 4, and a "temporary substitute automobile" is defined to mean "any automobile . . . not owned by the named insured, while withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction. . . ." *Id.*

In short, the Farmers policy contractually obligates Farmers to pay property damage caused by Baasanjav which results from his use of a substitute automobile while his owned automobile is being repaired or serviced. Baasanjav caused damage covered by his Farmers insurance policy when he negligently ran into Brand's vehicle while driving the Enterprise vehicle because his own car was being serviced or repaired.

Farmers urges the Court to apply the "Other Insurance" clause in its policy to find that Farmers is not liable to either its policy holder or to Enterprise. The "Other Insurance" clause in the Farmers policy states:

> If the insured has other insurance against a loss covered by Part I of this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other and collectible insurance.

Farmers Insurance Policy, page 6 of Policy Form 56-2450, 2nd edition, 7-95. In *Hertz*, at footnote 3, the Virginia Supreme Court specifically reserved the question of whether these "Other Insurance" clauses are enforceable under the Virginia Omnibus Clause, Va. Code Ann. § 38.2-2204, because the USAA policy at issue in *Hertz* was not issued or delivered in Virginia. *Hertz*, 265 Va. at 458. Although the Farmers policy was issued or delivered to Baasanjav in Virginia, this Court similarly does not reach the question of whether the "Other Insurance" clause at issue in this case is enforceable. Assuming without deciding that the "Other Insurance" clause in the Farmers policy is enforceable in Virginia, the Court finds that the self-insurance in this case is not "collectible insurance" as that term is contemplated by the "Other Insurance" clause.

While the question of whether self-insurance is included in the definition of "collectible insurance" in the context of "Other Insurance" clauses has not been decided in Virginia, numerous other courts throughout the country have concluded that self-insurance is not included in the definition of "collectible insurance." *See, e.g., Wake County Hosp. Sys., Inc. v. National Cas. Co.*, 804 F. Supp. 768, 777 (E.D. N.C. 1992), *aff'd*, No. 92-2586, 1993 U.S. App. LEXIS 15159 (4th Cir. June 22, 1993) (holding that self-insurance does not constitute "other valid and collectible insurance"); *Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So. 2d 1184, 1186-87 (Fla. App. 1981) (concluding that self-insurance is not "other collectible insurance"); *Dotson v. Agency Rent-A-Car*, 101 Ill. App. 3d 804, 428 N.E.2d 1002, 1004, 57 Ill. Dec. 322 (1981) (finding that self-insurance is not "other insurance" according to the terms of State Farm's insurance policy).

Furthermore, if Farmers wanted its "Other Insurance" clause to include self-insurance, it could easily add language including self-insurance. *See Wake County Hosp. Sys.*, 804 F. Supp. at 776. Therefore, by the terms of its own contract with its insured, Farmers is required to provide primary liability insurance for damages caused by Baasanjav resulting from his use of a substitute automobile. These cases are consistent with the policies set out by the legislative scheme.

## Conclusion

When Baasanjav rented a car from Enterprise, he contractually agreed to indemnify Enterprise for all losses, liabilities, damages, injuries, claims, demands, costs, attorneys' fees, and other expenses incurred by Enterprise from the rental transaction. Additionally, Baasanjav rejected the Supplemental Liability Protection. No principle in Virginia law prohibits Enterprise from enforcing this indemnity provision pursuant to the Lease Agreement.

This Court finds that self-insurance is not the functional equivalent of insurance in the context of this case and, therefore, Enterprise is not improperly seeking indemnification from its own insured. Under *Hertz*, Enterprise is primarily liable and has satisfied that liability by promptly paying out the third party's claims. Under the Farmers policy, Farmers is primarily liable for property damage caused by Baasanjav which resulted from his use of a substitute automobile while his own automobile was being repaired or serviced. Farmers' "Other Insurance" clause is not invoked in this case because self-insurance is not "collectible insurance." Therefore, the Court finds that Enterprise may seek indemnity from its renter and the amount owed to Enterprise by Baasanjav must be covered by Farmers under Farmers' insurance policy with Baasanjav.

Accordingly, Enterprise's Motion for Summary Judgment is granted and Farmers' Motion for Declaratory Judgment is denied.